## In re Grand Jury Investigation John HARKINS.

## Appeal of John HARKINS.
## No. 80–1614.

United States Court of Appeals, Third Circuit.

Argued May 19, 1980.

Decided May 30, 1980.

As Amended June 17, 1980.

Rehearing Denied July 21, 1980.

---

Garth, Circuit Judge, dissented on denial of rehearing en banc, and filed statement.

Gary B. Zimmerman (argued), Irving M. Green (argued), New Kensington, Pa., for appellant.

Robert J. Cindrich, U. S. Atty., Paul J. Brysh (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

In *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court held that a grand jury witness had "just cause" to refuse to answer a question if the question was based on information obtained from an electronic wiretap already determined to be illegal. In this case we must examine an issue expressly left open in *Gelbard*—whether a grand jury witness, who has refused to answer a question based on a facially valid court ordered wiretap, has a right to challenge the legality of the wiretap by examining government documents supporting the court order and by presenting evidence purportedly to show the insufficiency of these documents. 408 U.S. at 61 n. 22, 92 S.Ct. at 2368. Because we conclude that the district court impermissibly barred access by the witness to these documents and failed to provide any hearing to present other defenses to his refusal to testify, we will vacate its order holding the witness in contempt.

## I.

John Harkins appeared before a federal grand jury in the Western District of Pennsylvania on March 26, 1980. Invoking his fifth amendment right against compulsory self-incrimination, he refused to answer any questions other than his name and address. The United States Attorney immediately went before a District Judge of the Western District of Pennsylvania seeking use immunity for Harkins' testimony pursuant to 18 U.S.C. §§ 6002 and 6003 (1976). Although the court granted immunity to Harkins, he expressed to the court his continued intention not to answer any questions. The court instructed the parties to set a date for a contempt hearing, but the United States Attorney requested that the date not be set until after Harkins returned to the jury and specifically refused to answer questions after the grant of immunity. The court acceded to the request, explicitly noting that the contempt hearing would be arranged and held after that point.[1] Harkins refused to testify and a date for a contempt hearing was subsequently set for April 7, 1980.

On April 7, rather than holding a contempt hearing, the district court only considered a motion by the United States Attorney to quash subpoenas recently served by Harkins on three assistant United States Attorneys and two F.B.I. agents. In these subpoenas Harkins had sought assorted information about the grand jury investigation and, in particular, the use of electronic surveillance as the basis for questions to be asked of Harkins.[2] Harkins was informed

1. The Judge stated:

> THE COURT: All right. I have ordered him to testify after I grant him an immunity. You can take him there and see if he will testify. He may have a change of heart between now and the time he gets to the 7th floor. If he does, that terminates the matter. If not, we will schedule a contempt hearing.
> [ASST. UNITED STATES ATTORNEY]: Thank you.
> THE COURT: At which time you have reserved the right to claim I should not have granted the immunity.
> [COUNSEL FOR HARKINS]: Yes, sir.
> THE COURT: We will hear that at that time. Right now, I have granted immunity. I have ordered him to testify. If he does not, would you see my office to arrange a contempt hearing.

.

> Gentlemen, I suggest you both do this together so we do not run into timing problems.
> Transcript of April 8, 1980 *reprinted in* App., at 5–6.

2. Harkins submitted the following list of proposed areas of inquiry under the subpoena:
   1. The basis of the judgment as to why the testimony of John Harkins, concerning the matters under inquiry, is necessary to the public interest of the United States.
   2. The current state of an investigation into violations of 18 U.S.C. 1955 concerning John Harkins' participation and whether or not the information sought from John Harkins is necessary for the prosecution of others or merely cumulative.
   3. Whether or not the information sought concerns any one particular investigation and if so:

by the government at the hearing that at least some of the questions were based on electronic surveillance, but the district court quashed the subpoenas on the ground that the witness had no right to any further information.

The hearing that day was not a contempt hearing, as the court specifically noted, but rather a hearing to consider the motion to quash.[3] When Harkins' counsel informed the court that Harkins would no longer make a general refusal to testify, the court allowed Harkins to return to the grand jury to answer questions. He warned Harkins, however, that if he "persists in his refusal to testify, I will *then* consider contempt." App., at 16. (emphasis added). He subsequently informed the parties:

If [Harkins] does not testify, they are going to bring him back here *and there will be* a contempt hearing this afternoon, if the Grand Jury is sitting today. We will have the hearing this afternoon. [Harkins] will be entitled to make a defense if [Harkins] wish[es].

App., at 18. (emphasis added) Later that afternoon the government advised the court

a. has the government obtained any evidence via electronic surveillance;
b. have the speakers on any tapes made via electronic surveillance been identified;
c. are the alleged crimes being investigated alleged to have occurred between September 1, 1974 and February 10, 1977.
4. The period of time the current investigation has been active, i. e., the date of the commencement of the investigation.
5. Whether or not any member of the Grand Jury indicated their desire to subpoena John Harkins to testify.
6. Whether or not the Grand Jury voted to apply to the Court for immunity and a contempt citation and what was the vote.
7. Whether or not the matter under investigation is in any manner related to indictment No. 77–28.

3. [COUNSEL FOR HARKINS]: Well, May I ask here Your Honor? Are we presently just discussing the grant of immunity in contrast to discussing a contempt of court citation for not answering the questions put—
THE COURT: Right now, it is a motion to quash. All we are discussing right now is a motion to subpoena, the subpoena which you served on the United States Attorney's office. That is all we are discussing.

that the grand jury which originally interrogated Harkins was not sitting that day. Thus, the government decided to delay Harkins' testimony until the 28th when that grand jury would be sitting.

On the 28th, however, before appearing before the grand jury, Harkins made a motion to quash the government's subpoena on the ground that the questions he would be asked were based on illegal wiretaps of his communications. The district judge held a hearing that morning in which the government claimed that the questions were based on a legal wiretap authorized by court order. The court examined *in camera* the court order, and the Attorney General's application and the accompanying affidavit,[4] and found them facially valid. It denied Harkins' further request for a full fledged hearing on the legality of the wiretap, which evidently would have required access by Harkins to these documents and to the surveillance logs,[5] and ordered Harkins to testify.

Harkins appeared before the grand jury, and responded to some questions, but refus-

THE COURT: The United States Attorney has not yet moved. Have you moved to hold him in contempt.
[ASS'T UNITED STATES ATTORNEY]: I was going to wait until the court made a determination on the motion to quash but I will do so now if it will clarify the issues.
[COUNSEL FOR HARKINS]: I do not think we want to do it that way Your Honor.
THE COURT: Well, you file it and I will set a hearing date on the contempt.
Hearing of April 7, 1980. App., at 11–12.

4. The United States Attorney informed the Court that Harkins was provided with an "inventory regarding his electronic surveillance" before the April 7 hearing, but no other information was provided. App., at 26a.

5. The exact nature of the hearing sought by Harkins in his motion and in his argument before the district court is not immediately clear to us from the record. The district court evidently interpreted him to be asserting a right to examine the documents supporting the court order, and to introduce evidence in support thereof. App. at 28a. Given the expedited nature of the hearing and the complexity of the statute, we see no reason to challenge the district court's perception of Harkins' request.

ed to answer five of the questions posed. When he was returned to the court, the district judge denied his request for a contempt hearing and immediately held him in contempt for refusing to answer a grand jury question without "just cause" in violation of 28 U.S.C. § 1826(a) (1976).[6]

Harkins has appealed the finding of contempt to this court on two grounds.[7] First, he argues that the district court did not provide him with an adequate hearing to establish that the questions he refused to answer were based on an illegal wiretap of his communications. He claims that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (the Act), requires that he be given access to the government documents supporting a facially valid court ordered wiretap in order to assess its legality. The Act, he further suggests, gives him the right to a plenary hearing in order to introduce witnesses and evidence challenging the sufficiency of these documents. Neither was provided by the district court in this case. Second, Harkins argues that the district court failed to give him any hearing at all on any of the other as yet unspecified grounds for his refusal to testify. We will first consider his procedural rights under the Act and then discuss whether the district court provided him with a hearing to present his other claims.

## II.

Under the Act Congress established a comprehensive program for regulating wiretapping and electronic surveillance. Electronic surveillance is prohibited except in specially regulated circumstances where law enforcement officials have received pri-

or judicial approval based on stringent guidelines. 18 U.S.C. §§ 2516, 2518(1)–(8). In order to enforce this prohibition the statute imposes criminal and civil penalties for unlawful interception as well as for disclosure of unlawful interception. 18 U.S.C. §§ 2511(1) and 2520. The Act also establishes its own exclusionary rule prohibiting the introduction of evidence obtained from illegal electronic surveillance in judicial or administrative proceedings, including the grand jury. 18 U.S.C. §§ 2515 and 2518(9)–(10). The force of this exclusionary rule in grand jury proceedings, the major question in this case, requires an interpretation of two sections.

Section 2515 states:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

On its face Section 2515 would appear to prohibit the use of evidence obtained from illegal wiretaps in grand jury contempt proceedings and to impliedly assure adequate procedures for an aggrieved witness to assess and challenge the legality of evidence upon which questions are based. Section 2518(10)(a), however, which specifies the type of hearings in which an "aggrieved person" can move to suppress admission of such evidence, does not include grand juries

---

6. Section 1826(a) provides:

Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information.

No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

7. The district court order of contempt and confinement was stayed by this court pending our decision on the merits.

among the list of proceedings.[8] It states in full:

(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

The legislative history on the interaction of these two provisions adds to this apparent contradiction by indicating that the procedures available for challenging use of such evidence in grand jury proceedings should be limited because of special solicitude for their informal nature. *See* S.Rep.No. 1097, 90th Cong., 2d Sess. 106 (1968), *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 2112, 2195.

This tension was in part resolved by the Supreme Court in *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), which allowed a recalcitrant witness to defend against a charge of contempt on the ground that the questions he was being asked were based on a wiretap conceded *arguendo* by the government to be illegal. The Court based its decision on the underlying purpose of the statute to exclude evidence obtained in violation of its provisions from introduction in future judicial or governmental proceedings, including the grand jury. It expressly left open, however, the rights of a grand jury witness when the illegality of the wiretap was not manifest because it had been undertaken pursuant to a court order. On this question, the concurring opinion by Justice White, who provided the necessary fifth vote, is instructive. He stated:

The United States asserts that § 2515 affords no excuse to grand jury witnesses under any circumstances. Reliance is placed on § 2518(10)(a) and the legislative history of the statute. I agree with the Court, however, that at least where the United States has intercepted communications without a warrant in circumstances where court approval was required, it is appropriate in construing and applying 28 U.S.C. § 1826 not to require the grand jury witness to answer and hence further the plain policy of the wiretap statute. This unquestionably works a change in the law with respect to the rights of grand jury witnesses, but it is a change rooted in a complex statute, the meaning of which is not immediately obvious as the opinions filed today so tellingly demonstrate.

Where the Government produces a court order for the interception, however, and the witness nevertheless demands a

8. In *Alderman v. United States*, 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969), the Supreme Court noted that Congress has not provided that illegally seized evidence is inadmissible against anyone for any purpose, but only that an "aggrieved person" may move to suppress the contents of a wire or oral com- munication intercepted in violation of the Act. Section 2510(11) defines "aggrieved person" for the purpose of the Act to mean "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."

full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings. At the same time, prosecutors and other officers who have been granted and relied on a court order for the interception would be subject to no liability under the statute, whether the order is valid or not; and, in any event, the deterrent value of excluding the evidence will be marginal at best. It is well, therefore, that the Court has left this issue open for consideration by the District Court on remand.

408 U.S. at 70, 92 S.Ct. at 2372.

The ambiguity of the wording of the statute, as well as the pragmatic approach suggested by Justice White's concurring opinion, has led to a conflict among the several courts of appeals examining the procedural rights of aggrieved grand jury witnesses raising the illegality of court ordered wiretaps as a basis for their refusal to answer questions. All the courts which have examined the question appear to agree that the witness has a right, at a minimum, to an *in camera* inspection by the judge of the court order and the supporting documents. In the earliest case on this subject, the Second Circuit in *In re Persico*, 491 F.2d 1156 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), held that a witness can challenge a wiretap in only three limited circumstances: "if there is an absence of a necessary court order or if there is a concession from the Government that the surveillance was not in conformity with statutory requirements or if there is a *prior* judicial adjudication that the surveillance was unlawful." 491 F.2d at 1162. These limitations would cause only minimum disruption of the grand jury proceedings. The Second Circuit's position has been largely adopted by the Fifth, Seventh, and Ninth Circuits in *In re Special February, 1977 Grand Jury (Pavone)*, 570 F.2d 674 (7th Cir.), *cert. denied*, 437 U.S. 904, 98 S.Ct.

3089, 57 L.Ed.2d 1133 (1978); *In re Grand Jury Proceeding (Worobyzt), United States v. Worobyzt*, 522 F.2d 196 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); and *In re Gordon*, 534 F.2d 197 (9th Cir. 1976).

We, however, are persuaded by the reasoning of three other circuit courts which have rejected or modified the *Persico* doctrine. Most recently the District of Columbia in *In re Grand Jury Proceedings (Katsourous)*, 613 F.2d 1171 (D.C.Cir.1979), following the First and Eighth Circuits in *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974); and *Melickian v. United States*, 547 F.2d 416 (8th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977), held that a witness does have a right of access, absent a showing of privilege or secrecy by the government, to the government documents supporting the wiretap, although it did not give the witness the right, as no court has done, to introduce evidence in his contempt hearing challenging the sufficiency of the evidence in those documents. We believe this position represents a pragmatic accommodation of the competing interests involved, and adopt the rule for this case.

### III.

▮ The adequacy of the procedures provided to grand jury witnesses invokes three clear interests that must be accommodated—the defendant's interest under the statute in not answering questions based on illegal wiretaps, the government's interests in effective grand jury investigations, and the government's further interest in protecting the secrecy of sensitive information contained in the materials supporting the wiretap or in the logs of the wiretap. A right of access to the court order and supporting materials when the government can show no secrecy interest should provide an important adversarial check and deterrent against the possible utilization of illegal wiretaps without undermining governmental concerns. As the Supreme Court noted in *Gelbard*, Section 2515 "serves not only to protect the privacy of communications, but also to ensure that the courts do not become

partners to illegal conduct: the evidentiary prohibition was enacted also 'to protect the integrity of court and administrative proceedings.'" 408 U.S. at 51, 92 S.Ct. at 2362–2363 (footnote omitted). Limiting examination of the materials supporting the wiretap to an *in camera* examination by the judge would deprive the witness of any meaningful opportunity to assert his right under the statute. The strong possibility exists that witnesses could be imprisoned for refusing to answer questions based on an illegal wiretap of their communication whose legality was never even tested through adversarial scrutiny.

■ Access to the government documents supporting the wiretap, moreover, would not allow recalcitrant witnesses to lengthen grand jury proceedings to any great extent, for the government would have control over and could eliminate most time delays; the *ex parte* hearing to suppress certain sensitive evidence is the only cause of delay, and could be completed by the government immediately. Witnesses would be obligated to examine expeditiously the documents, unless they are protected, and appear at a limited hearing. The loss in time would not be appreciably greater than that already caused by the holding of

a contempt hearing, which is mandatory in this court. *See In re Grand Jury Investigation (Bruno),* 545 F.2d 385 (3d Cir. 1976). Thus, we believe that a witness does have a right, absent a showing by the government of a sufficient need for secrecy, to examine the following documents—the court order, the Attorney General's application for and affidavit supporting the court order, and a government affidavit indicating the length of time of the actual wiretap.[9]

■ At the hearing regarding the wiretap, however, we do not believe that the witness should have a right to introduce his own evidence testing the factual sufficiency of the evidence contained in the documents. Such a full blown suppression hearing could cause, as Justice White warned, unmanageable delay as witnesses exercise their right for a continuance to gather and present evidence—a right which might cause other abuses. Not one of the courts of appeals that have considered the rights of witnesses under these sections has asserted such a right, and we decline to do so here. We adopt the specific language of Judge Coffin in *Lochiatta,* 497 F.2d at 808, as to the procedure which a trial judge must follow in these cases.[10]

---

**9.** Our own decision in *United States v. D'Andrea,* 495 F.2d 1170 (3d Cir.) (per curiam), *cert. denied,* 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974), is not to the contrary. There we upheld the district court's refusal to give a witness access to the government files to determine whether the government's case at trial was based on *any* electronic surveillance. Determining whether there has been any surveillance is far different from determining as in this case the legality of the surveillance. The prosecutor has conceded the surveillance has occurred.

**10.** Judge Coffin wrote:
There should be an opportunity for inspection of these limited materials: the authorized application of the Attorney General or his designate, 18 U.S.C. § 2516(1), the affidavits in support of the court order, the court order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted. No evidence need be provided the defendant for the purpose of litigating the issues of truth of statements made by affiants or the "minimization" of federal officials in monitoring conversations.

If the government does not object upon grounds of harm due to breach of secrecy, the defendant is entitled to access to these materials in order to develop his defenses. If the government interposes an objection on secrecy grounds, the district court must determine whether the secret information can be successfully deleted or summarized and access to the excerpted material granted. *Cf.* 18 U.S.C. § 3500; *United States v. Picard,* 464 F.2d 215, 220 (1st Cir. 1972). If the district judge, in his discretion, determines that so much of the material is of a sensitive nature that revelation of any of it would prejudice the government, the court must then review this material in camera to determine the constitutional and statutory validity of the application and the court order based on the warrants, and compliance by the government with the court ordered time limits on surveillance. This approach vests the district court with wide discretion. But just as a fit between metals of varying rates of expansion under heat is practically resolved by a resilient gasket, so, we feel, is a sound

**1168**

## IV.

■ Beyond the inspection rights of the witness under the Act, we still must consider whether the district court provided Harkins with a required contempt hearing in which he could raise any grounds for showing just cause. In *Bruno*, 545 F.2d at 388 (3d Cir. 1976), we held that a recalcitrant witness had a right under 28 U.S.C. § 1826(a) to a contempt hearing with a reasonable time to prepare.

The district court in the present case, however, did not provide the witness with *any* opportunity to present a defense. At the first hearing on March 26 he noted that a contempt hearing *would* be held when Harkins refused to testify after the immunity was granted that day. On the date that was subsequently set for the hearing, April 7, however, the court only considered the government's motion to suppress Harkin's subpoena. It explicitly stated after learning that Harkins would not make a general refusal that it would allow Harkins to return to the grand jury and would hold a contempt hearing if he continued to refuse to testify. While it was expected that the hearing would be held the same day, the government decided it wished to bring Harkins before the original grand jury, so the matter was further delayed. Finally, on April 28, before Harkins' testimony, the court only held a hearing on Harkins' motion to quash the subpoena because of the allegedly illegal wiretaps. The court did not and could not have considered the issue of contempt, for the defendant had not yet gone to the grand jury that day and had had the opportunity to refuse to answer any of the specific questions. When Harkins did go and was brought back to the judge for the last time—with a history of at least three statements by the judge that a hearing would be held after he refused to testify—the court summarily held Harkins in contempt without any opportunity for

the hearing. This is in violation of our decision in *Bruno*.

## V.

We will therefore vacate the district court's order holding Harkins in contempt and will remand for proceedings consistent with this opinion.

GARTH, Circuit Judge.

I would grant the petition for rehearing en banc. I agree with the approach of the Second Circuit in *In re Persico*, 491 F.2d 1156 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), and the other courts of appeals which have followed it. There is no reason to interrupt grand jury proceedings needlessly to allow a witness who cannot be harmed to litigate the legality of a wiretap, as long as the questions the witness is asked to answer are not derived from obviously unlawful electronic surveillance.[1] Any arguable objections the witness may have can be litigated later if the witness is ever indicted and wishes to challenge introduction of the evidence at issue against him.

Of equal importance, I believe that the spirit of the Supreme Court's decisions compels this result. While the Court explicitly left this issue open in *Gelbard v. United States*, 408 U.S. 41, 61 n.22, 92 S.Ct. 2357, 2367, 33 L.Ed.2d 179 (1972), an analogy to the constitutional question of grand jury use of evidence derived from unlawful searches and seizures sheds light on the statutory question posed in the present appeal.

In *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court held that a witness summoned to appear and testify before a grand jury could not refuse to answer questions on the ground that they were the product of a

and sensitive judicial discretion properly relied upon when crisp rulemaking proves intractable.
497 F.2d at 808.

1. This was certainly reflected in *United States v. D'Andrea*, 495 F.2d 1170 (3d Cir.) (per curiam),

*cert. denied*, 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974), where we held, as the penal recognizes today, that there is not even a right of access to documents where there has been no admission of wiretapping.

search and seizure that allegedly violated the fourth amendment. The *Calandra* majority distinguished *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), which had held grand jury subpoenas based on illegally seized evidence to be invalid, in two respects:

(1) In *Silverthorne*, the targets of the subpoenas had already been indicted, and since the grand jury apparently did not need the subpoenaed materials for its investigative or accusatorial duty, it could not obtain evidence based on an illegal seizure merely for use in an upcoming criminal prosecution. In *Calandra*, the target had not been indicted.

(2) In *Silverthorne*, prior to issuance of the subpoenas, there had been an adjudication that the search and seizure upon which they were based were illegal. In *Calandra*, the target's motion would have required interruption of the grand jury proceedings to decide this question for the first time.

*See* 414 U.S. at 352 n.8, 94 S.Ct. at 622.

The second ground for distinguishing *Calandra* from *Silverthorne* would seem to indicate a similar distinction between *Gelbard* and the present case. In the *Silverthorne* situation, where illegality has already been adjudicated, or in the *Gelbard* situation, where it has been conceded by the Government, the witness may invoke a right not to answer. But in the *Calandra* situation, or similarly in the present case, where the matter of legality remains disputed, the right of a witness not to be subjected to questions resulting from possibly unlawful activity is subordinated to the need for smooth functioning of the grand jury without interruptions. In the context of a search and seizure, *Calandra* holds that the witness is not entitled to litigate anything before answering questions or subpoenas. In the present case, I would hold that the witness is entitled only to the court's *in camera* examination of the documents au-

thorizing the electronic surveillance for facial validity.[2] In both situations, of course, the matter of illegality could be litigated later if the witness is indicted and the Government seeks to introduce the evidence in question against him.

Accordingly, because I believe that the result reached by the panel is contrary to the spirit, even if not the letter, of the prior holdings of the Supreme Court and of our court, I would grant the petition for rehearing.

---

**2.** Despite the vague statement in *Calandra* to the effect that the statute regulating electronic surveillance, 18 U.S.C. § 2515, imposes restrictions on the grand jury beyond the fourth

amendment, *see* 414 U.S. at 355 n.11, 94 S.Ct. at 623 (discussing and distinguishing *Gelbard*), I believe that the overriding concern in each situation should be the grand jury function.