637 P.2d 346 (1981)
In re the Matter of P. R., A Grand Jury Witness, Petitioner,
v.
The DISTRICT COURT In and For the COUNTY OF DENVER, State of Colorado, and the Honorable Harold D. Reed, one of the Judges Thereof, Respondents.
No. 81SA390.
Supreme Court of Colorado, En Banc.
November 23, 1981.
*348 J. Gregory Walta, State Public Defender, David G. Manter, Deputy State Public Defender, Denver, for petitioner P. R., a Grand Jury Witness.
White & Steele, P. C., Michael W. Anderson, Denver, for amicus curiae The Denver Post, Inc.
J. D. MacFarlane, Atty. Gen., Mary J. Mullarkey, Sol. Gen., Mark C. Pautler, Robert M. Brown, Asst. Atty. Gen., Denver, for respondents.
QUINN, Justice.
P. R., a grand jury witness, filed this original proceeding in the nature of prohibition seeking to prohibit the respondent court from closing to the public the evidentiary phase of a contempt hearing based on her refusal to testify before a statutory grand jury. We issued a rule to show cause why the relief requested should not be granted. The Denver Post, Inc., was granted leave to enter the case as amicus curiae because of its First Amendment interest implicated by the order of closure. Upon consideration of the answer to the show cause order and the replies thereto, we now make the rule absolute.

I.
P. R. was subpoenaed to appear before a statewide grand jury impaneled in March 1981 upon the petition of the attorney general.[1] Through her attorney, P. R. notified the attorney general that she intended to exercise her privilege against self-incrimination and, further, that any questioning before the grand jury would be based in whole or in part upon an illegal wiretap.[2] An order authorizing the wiretap had been entered prior to the impaneling of the grand jury. Prior to P. R.'s scheduled appearance before the grand jury the court ruled that she was "an aggrieved person" entitled to move for the suppression of the contents of any intercepted communication and any evidence derived therefrom.[3] The attorney general then applied to the court *349 for witness immunity and the court, pursuant to section 13-90-118, C.R.S.1973, ordered the witness to testify under a grant of transactional immunity.[4]
P. R. appeared before the grand jury on September 4, 1981, and disclosed her name, address and occupation. However, she refused to answer any other questions, claiming the questions were based on an illegal wiretap. The court, on motion of the attorney general, ordered P. R. to show cause why she should not be held in contempt for her refusal to testify. The show cause order, returnable on September 9, 1981, was issued pursuant to section 16-5-204(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), which provides:
"Whenever a witness in any proceeding before any grand jury refuses, without just cause shown, to comply with an order of the court to testify ... the prosecuting attorney may submit an application to the court for an order directing the witness to show cause why the witness should not be held in contempt. After submission of such application in a hearing at which the witness may be represented by counsel, the court may, if the court finds that such refusal was without just cause, hold the witness in contempt and order the witness to be confined. Such confinement shall continue until such time as the witness is willing to give such testimony or provide such information; however, the court may release the witness from confinement if the court determines that such further confinement will not cause the witness to give such testimony or provide such information. No period of such confinement shall exceed the term of the grand jury ... and in no event shall such confinement exceed six months."
On the return date P. R. informed the court that her defense to the contempt citation was based solely on the illegality of the wiretap and her right to suppress the contents of the intercepted communication. Present in court were two prospective witnesses and a newspaper reporter for the Denver Post. The court requested the attorney general and defense counsel to address the propriety of an open hearing on the contempt issue. P. R. requested a public hearing, contending that closure would *350 violate her right to due process of law. The attorney general, on the other hand, requested a closed hearing. The court permitted argument on behalf of the newspaper, which urged a public hearing in furtherance of the newspaper's First Amendment interest in reporting matters of public concern. The court determined that the contempt hearing was a part of the grand jury proceedings, and since grand jury proceedings must be secret,[5] the contempt hearing likewise must be secret. It, therefore, ruled as follows:
"[I]t's going to be my ruling in this case that the proceeding in contempt against this particular party, the questions propounded and the development of the evidence as to whether or not those questions have or have not been answered and whether there is or is not justification for that refusal, will be conducted as part and parcel of the grand jury proceedings. Such will be kept secret.
"Then I will order that the matter be held open so there can be an adjudication, if such is found, of contempt or a lack of contempt in either respect; realizing fully this may very well reveal the name of the witness."
We conclude that the respondent court's order is unsupported by any finding of compelling need for closure and, in the absence of such finding, the order of closure suffers from an unconstitutional overbreadth.

II.
The court's determination that the contempt hearing was part of the grand jury proceedings and therefore should be conducted in secret was based on a faulty premise. Grand jury proceedings and a contempt hearing serve distinct purposes.
"Grand juries investigate, and the usual end of their investigation is either a report, a `no-bill' or an indictment. They do not try and they do not convict. They render no judgment.... Even when witnesses before grand juries refuse to answer proper questions, the grand juries do not adjudge the witnesses guilty of contempt of court in secret or in public or at all. Witnesses who refuse to testify before grand juries are tried on contempt charges before judges sitting in open court." In re Oliver, 333 U.S. 257, 264-65, 68 S.Ct. 499, 503, 92 L.Ed. 682, 689-90 (1948).
Because a grand jury is strictly an investigatory body, its purpose is served by conducting its proceedings in secrecy.[6]
A contempt proceeding, in contrast, is designed to vindicate the dignity and authority of a court when its orders have been flouted. Criminal contempts are acts which obstruct the administration of justice. E. g., Wyatt v. People, 17 Colo. 252, 28 P. 961 (1892). A contempt proceeding in which the conduct at issue occurred outside of the presence of the court is adjudicatory in character. The purpose of the hearing is to ascertain the guilt of the accused by deciding contested factual issues. See Austin v. Denver, 156 Colo. 180, 397 P.2d 743 (1964). Where indirect contempt has been charged, as distinguished from contemptuous conduct occurring in the presence of the court, the respondent is entitled to notice of the charge, the right to be represented by counsel at the hearing, *351 the right to call and confront witnesses, the right to an adjudication by the court, and, in the absence of an overriding and compelling interest, the right to have the hearing conducted in open court. See Losavio v. District Court, 182 Colo. 180, 512 P.2d 266 (1973); Austin v. Denver, supra. The grand jury, although an adjunct to the court, has no power to adjudicate or punish contempt. Defiance of a grand jury is referred to the court for an order of compliance, and it is the disobedience of the resulting order that constitutes the contempt. Wyatt v. People, supra.
In detailing the procedures for a contempt hearing in the case of a witness who refuses to testify before the grand jury, section 16-5-204(1)(a) points up the functional distinction between a grand jury proceeding and a contempt hearing. When a witness refuses to cooperate with the grand jury, the prosecutor must apply to the court for a show cause order. The witness is then entitled to a hearing on the issue of whether the refusal to testify was without "just cause," and the court may hold the witness in contempt where "just cause" is not shown. By setting forth this procedure in two distinct phases, the statute contemplates that the witness be entitled to the full panoply of procedural due process rights that accompany any other indirect contempt hearing.
The character of the contempt hearing as a judicial proceeding separate and apart from the grand jury proceedings is further apparent from the nature of P.R.'s defense to the contempt charge. Her claim is that the questions propounded to her were based on an illegal wiretap of her telephone communications. P.R. has a statutory right to seek the suppression of intercepted communications as well as evidence derived therefrom, section 16-15-102(1), C.R.S.1973 (1978 Repl. Vol. 8), and this right is not impaired by the court's grant of immunity to the grand jury witness. While such immunity adequately safeguards the witness' privilege against self-incrimination, it does not protect the witness' privacy interest in the contents of the intercepted communications. See In re Harkins, 624 F.2d 1160 (3d Cir. 1980). An order of suppression would constitute a showing of "just cause" within the meaning of section 16-5-204(1)(a). See Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); In re Harkins, supra; Westerberg v. District Court, 181 Colo. 10, 506 P.2d 746 (1973).
The court, not the grand jury, must resolve the issues of suppression and "good cause" and the resolution must take place in the context of a judicial proceeding aimed at adjudication. The court therefore erred in determining that the contempt hearing was part of the grand jury proceeding. The remaining question is whether, and under what circumstances, the court may close the contempt hearing to the public.

III.
In the case of In re Oliver, supra, the United States Supreme Court squarely faced the question whether a contempt proceeding and the resulting adjudication and sentence, all conducted in secrecy, could be reconciled with the due process clause of the Fourteenth Amendment. In holding such a proceeding antithetical to the Anglo-American concept of due process of law the Court stated:
"In view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison." 333 U.S. at 273, 68 S.Ct. at 507, 92 L.Ed. at 694.
Oliver also rejected the notion that grand jury secrecy somehow carries over into a contempt hearing simply because the contempt citation arose out of an event occurring before the grand jury. Rather, the propriety of trying, convicting and sentencing a recalcitrant grand jury witness must be measured "not by the limitations applicable *352 to grand jury proceedings, but by the constitutional standards applicable to court proceedings in which an accused may be sentenced to fine or imprisonment or both." In re Oliver, supra, 333 U.S. at 265, 68 S.Ct. at 503-504, 92 L.Ed. at 690.
The respondent court in this case primarily relied on Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) for its order of closure. A recitation of the facts of that case is essential to an understanding of the Supreme Court's holding. Levine, although under a grant of immunity, refused to answer questions before a grand jury and government counsel advised the court of his refusal. The judge then cleared the courtroom except for the government attorney, Levine and Levine's attorney. After convening the grand jury in court the judge, indicating he was proceeding as "[t]he court and the Grand Jury," put to Levine the six questions which he previously had refused to answer. Upon Levine's refusal to answer on grounds of self-incrimination, the court asked "why I should not so adjudicate this witness in contempt." Levine's counsel made three points, none of which pertained to the exclusion of the general public from the proceedings. The court adjudicated Levine in contempt and imposed a term of imprisonment. In affirming the conviction the Supreme Court bottomed its holding on the fact that no request had been made for a public hearing and noted: "Had petitioner requested, and the court denied his wish, that the courtroom be open to the public before the final stage of these proceedings we would have a different case." 362 U.S. at 618, 80 S.Ct. at 1043, 4 L.Ed.2d at 996.[7]
The facts of this case begin precisely where those of Levine leave off. Here, P.R. expressly requested an open hearing on her alleged contempt of court and has waived her statutory privilege attaching to communications intercepted by the wiretap. See section 16-15-102(8)(b), and (15), C.R.S. 1973 (1978 Repl.Vol. 8).[8] Also, unlike Levine, P.R.'s refusal to answer questions is based not on her privilege against self-incrimination, for which she has been granted immunity, but upon her statutory right to seek suppression of all intercepted communications and any evidence derived therefrom prior to being questioned by the grand jury. Gelbard v. United States, supra; In re Harkins, supra; Westerberg v. District Court, supra.
The contempt hearing in this case has the characteristics of both a motion to suppress made in the course of a criminal proceeding and a trial on the merits. P.R. will attempt to establish the illegality of the wiretap and the existence of "just cause" in refusing to testify before the grand jury. The state, on the other hand, will seek to establish the legality of the wiretap and the absence of "just cause" in P. R.'s recalcitrance before the grand jury. The outcome will rest upon the court's findings of fact and conclusions of law. If P. R. fails to show "just cause," the likelihood of her immediate imprisonment is substantial.
We held in Star Journal Publishing Corp. v. The County Court, 197 Colo. 234, 237, 591 P.2d 1028, 1030 (1978), that a judge may close a pretrial proceeding in a criminal case only if "(1) the dissemination of information would create a clear and present danger to the fairness of the trial; and (2) the prejudicial effect of such information on trial fairness cannot be avoided by any reasonable alternative means." See also ABA Standards for Criminal Justice, Fair Press and Free Trial, Standard 8-3.2 (1978). There is no demonstrable reason for imposing *353 a less stringent standard in this case. If anything, the characteristics of the contempt hearing and its importance to P.R.'s liberty interest provide a more substantial basis for subjecting it to an even greater level of public scrutiny than that accorded a pretrial hearing in an ordinary criminal case. In the latter situation the outcome of the hearing does not hold immediate consequences of imprisonment for the defendant.
In addition to P.R.'s interests, there are other interests implicated by the order of closure, notably those of the public and the media. "Free speech carries with it some freedom to listen" and "[w]hat this means in the context of trials is that the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 576, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973, 989 (1980). In United States v. Cianfrani, 573 F.2d 835, 850-51 (3d Cir. 1978), the Third Circuit Court of Appeals delineated the public character of the interest attaching to the contempt hearing in this case:
"[O]ften the only time that police conduct is scrutinized in public is at a suppression hearing. The public has a vital interest in learning about the conduct of law enforcement officers, especially where allegations of coercion and invasion of constitutionally and congressionally protected rights are made.
"These interests are strengthened where the interception of private conversations by surreptitious means is involved. Congress has recognized the need to protect the private conversations of all citizens from electronic interception except in the most limited and controlled circumstances. Where there are allegations that the police have violated Congress commands in this area, all citizens have a strong interest in learning the facts. This is especially true since electronic surveillance, like much other police conduct, takes place in secret, veiled from the view of ordinary citizens. Suppression proceedings that test the legality of police conduct in recording the private conversations of citizens accordingly should be subject to the public trial requirement. United States v. Clark, 475 F.2d 240, 247 (2d Cir. 1973).
"As important as the actual prevention of judicial abuse or perjury at such hearings is the preservation of the appearance of justice. Secret hearingsthough they be scrupulously fair in realityare suspect by nature. Public confidence cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view."
We therefore hold that the evidentiary phase of P. R.'s contempt hearing may be closed only upon express findings by the respondent court that: (1) a public hearing would create a clear and present danger to the investigation of matters presently pending before the statutory grand jury; and (2) the prejudicial effect of such information on presently pending grand jury matters cannot be avoided by any reasonable alternative less drastic than closure. The court may hear in camera any testimony relative to the effect of a public hearing on the integrity of grand jury proceedings prior to its ruling on closure, the record of such hearing to be sealed for purposes of appellate review. Further, the burden is upon the party seeking closure to establish the factual basis for the application.
Here the order of closure was not predicated upon a finding of a clear and present danger to the efficacy of grand jury proceedings. For all the record shows, the grand jury might have concluded its investigation of matters connected with the interception of P. R.'s telephonic communications. In that event, disclosure of the communications in a public hearing would no more jeopardize grand jury integrity than a public trial on an indictment returned by the same grand jury. We have rejected the notion that secrecy for secrecy's sake should *354 attend grand jury proceedings. "Rather, the maintenance of the wall of secrecy around grand jury testimony should be grounded upon sound reason." Parlapiano v. District Court, 176 Colo. 521, 527, 491 P.2d 965, 968 (1971).[9]
A finding of clear and present danger, by itself, does not constitute a warrant for an order of closure. Such a finding merely triggers the next level of inquirythat is, whether reasonable and less drastic alternatives are available to the order of closure. It might well be that the contempt hearing will involve no testimonial evidence at all but, instead, will center on the legal sufficiency of the wiretap order or the application in support thereof, issues which need not necessarily implicate grand jury secrecy. If the evidentiary phase of the contempt hearing likely will involve disclosure of pending grand jury matters, the court should consider whether there are alternatives, short of total closure, which provide adequate protection against unwarranted disclosure while preserving the principle of a public hearing. See United States v. Cianfrani, supra. Only in the absence of such alternatives may the evidentiary part of the contempt hearing be closed.[10]
In this case the respondent court's total closure of the evidentiary phase of the contempt hearing, without a finding of compelling necessity, impaired the due process interest of P. R. in a public hearing, U.S.Const. Amend. XIV; Colo.Const. Art. II, Sec. 25, as well as the constitutional interest of the public and the media in attending a judicial proceeding which is the substantial equivalent of a trial, U.S.Const. Amend. I; Colo.Const. Art. II, Sec. 10. The rule to show cause is made absolute and we direct the respondent to proceed in accordance with the views herein expressed.
NOTES
[1] Section 13-73-101, C.R.S.1973, states:

"When the attorney general deems it to be in the public interest to convene a grand jury which has jurisdiction extending beyond the boundaries of any single county, he may petition the chief judge of any district court for an order in accordance with the provisions of this article. Said chief judge may, for good cause shown, order the impaneling of a state grand jury which shall have statewide jurisdiction. In making his determination as to the need for impaneling a state grand jury, the judge shall require a showing that the matter cannot be effectively handled by a grand jury impaneled pursuant to article 72 of this title, such a grand jury being referred to in this article as a `county grand jury'."
[2] Section 16-5-204(4)(c), C.R.S.1973 (1978 Repl. Vol. 8), provides that "[i]n any proceeding before the grand jury, if the prosecuting attorney has written notice in advance of the appearance of a witness that such witness intends to exercise his privilege against self-incrimination, such witness shall not be compelled to appear before the grand jury unless a grant of immunity has been obtained."
[3] "`Aggrieved person' means a person who was a party to any intercepted wire communication or a person against whom the interception was directed." Section 16-15-101(1), C.R. S.1973 (1978 Repl. Vol. 8). The grounds for suppression of a wiretap interception are found in section 16-15-102(10), C.R.S.1973 (1978 Repl. Vol. 8):

"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the state of Colorado, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that: The communication was unlawfully intercepted; the order of authorization or approval under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval. This motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion, or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall not be received as evidence."
[4] Section 13-90-118, C.R.S.1973 states:

"When in the judgment of any district attorney, attorney general, or special prosecutor of the state of Colorado the testimony of any witness or the production of any books, papers, or other evidence by any witness in any case or proceeding before any court of the state of Colorado or before any grand jury of the state of Colorado, upon the consent of such grand jury, involving any violation of the penal laws of the state is necessary to the public interest, he may make application to the court that the witness be instructed to testify or produce evidence subject to the provisions of this section. Upon order of the court, the witness shall not be excused from testifying or from producing books, papers, or other evidence on the grounds that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor may testimony so compelled be used as evidence in any criminal proceeding against him in any court, except a prosecution for perjury in the first degree or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."
[5] Crim.P. 6.2 provides, in pertinent part, that "[a]ll persons associated with a grand jury and its investigations or functions should at all times be aware that a grand jury is an investigative body, the proceedings of which shall be secret." An oath of secrecy is administered to each witness testifying before the grand jury. Crim.P. 6.3. The oath continues "until such time as an indictment is made public ... or until a grand jury report is issued dealing with the investigation." Crim.P. 6.2.
[6] The justifications for grand jury secrecy are several: (1) to prevent the escape of those whose indictment may be contemplated; (2) to prevent disclosure of derogatory information presented to the grand jury against someone who has not been indicted; (3) to encourage witnesses to come before the grand jury and speak freely with respect to a commission of crimes; (4) to encourage grand jurors in uninhibited investigation of and deliberation on suspected criminal activity. See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 405, 79 S.Ct. 1237, 1244, 3 L.Ed.2d 1323, 1390 (1959); Parlapiano v. District Court, 176 Colo. 521, 491 P.2d 965 (1971).
[7] The Supreme Court in Levine held that the specific guarantees of the Sixth Amendment do not apply to contempt hearings and issues relating to the public aspect of the hearing are to be resolved under the Due Process Clause. We have no need in this case to address the applicability of Article II, Section 16, of the Colorado Constitution to contempt hearings.
[8] P.R.'s statutory privilege, had it not been waived, would have applied only until such time as the court determined the wiretap interception was lawful. Upon such determination the contents of the communication and evidence derived therefrom may be disclosed "in any court of this state or in a grand jury proceeding." Section 16-15-102(14), C.R.S.1973 (1978 Repl.Vol. 8).
[9] Section 16-15-102(9), C.R.S.1973 (1978 Repl. Vol. 8), is an example dispensing with grand jury secrecy in cases involving the interception of a wire or oral communication, or evidence derived therefrom, by providing for a prehearing disclosure to the person aggrieved of "a copy of the court order, and accompanying application, under which the interception was authorized or approved."
[10] Without attempting to exhaust the possibilities, we mention the following alternatives to full closure only to emphasize that the remedy of closure should not be viewed as the only response to the problem posed by this case: a prehearing stipulation of facts rendering unnecessary the presentation of any testimony as to grand jury matters; a prehearing stipulation restricting the evidence in such a manner that the character of the grand jury investigation remains confidential; where practicable, the use of transcripts or other documents from which names and other identifying references have been deleted; if necessary, a closure of parts of the hearing only.

The court should consider similar devices to protect the confidentiality of intercepted communications involving persons other than P. R. See United States v. Cianfrani, 573 F.2d 835, 859 (3d Cir. 1978). If the court orders that the contempt hearing be fully or partially closed, it should make available to the public a transcript of the closed portion of the hearing once the need for secrecy no longer exists. Id.