JUSTICE BOATRIGHT, concurring in part and dissenting in part.
¶58 The majority reaches the remarkable conclusion that a hearing regarding a motion to quash a grand jury subpoena is not a grand jury proceeding. The majority reaches this conclusion despite the fact that the motion to quash the grand jury subpoena was filed in the grand jury case, to be ruled upon by the judge responsible for the grand jury proceeding, and the determination of which will impact the evidence the grand jury would hear. Hence, I disagree. In my view, a hearing on an evidentiary question before a grand jury is a part of a grand jury proceeding just like an evidentiary question in a criminal trial is part of the criminal proceeding. No one would ever argue that a hearing regarding a motion to quash a subpoena in a criminal case is "ancillary to and distinct from" its criminal proceeding. By concluding that this hearing is separate from the grand jury proceeding, the majority holds that a mandatory disclosure statute applies to this hearing.
¶59 The mandatory disclosure provision in section 16-15-102(9), C.R.S. (2017), has a broad reach that requires extensive disclosure of investigatory materials when used in a covered proceeding. Section 102(9) mandates disclosure of the "court order and accompanying application" before any "intercepted wire, oral, or electronic communication or the evidence derived therefrom" can be received in evidence or disclosed in "any trial, hearing, or other proceeding." § 16-15-102(9) (emphasis added). Today the majority holds that a hearing on a grand jury subpoena is a hearing separate from a grand jury proceeding itself, and is therefore subject to section 102(9)'s disclosure mandate; in so doing, it forces wholesale disclosure of grand jury investigatory materials without a showing of need or relevance, and without inquiring whether disclosure would have deleterious effects on the underlying investigation. This decision impairs the investigative function of the grand jury, which I fear will result in severe, unintended consequences. In my view, current law does not compel such a result. A careful reading of the mandatory disclosure statute and related authority, with thorough consideration of the on-the-ground reality, provides sound basis to hold that a hearing such as the one in this case is part of a grand jury proceeding and is therefore not a section 102(9) hearing subject to mandatory disclosure. While I agree with the majority regarding the treatment of subpoenaed attorney-client communications, I cannot agree that the subpoena hearing is subject to the mandatory disclosure statute, section 102(9). I therefore concur with the majority in part, but respectfully dissent from section III.B.
¶60 Under the majority's decision, virtually every subpoena issued in grand jury investigations utilizing wiretaps or evidence derived therefrom provides a crowbar that the defendant can use to pry open the door to information that law enforcement has obtained and kept confidential throughout its investigation. Going forward, it is easy to envision the clear incentive for defense counsel, even without a likelihood of success, to fight every subpoena. Just by filing a motion to quash, which the prosecution will naturally oppose, the defense will discover previously confidential details of the ongoing investigation. Federal courts have avoided this trap when interpreting the federal version of the mandatory disclosure statute by first, holding that grand jury proceedings are not subject to the virtually identical federal statute governing mandatory disclosures; and second, when the court determines *67 disclosure is required, utilizing a far more nuanced regime than the majority's broad disclosure requirement announced today. We should follow the federal court precedent.
¶61 I agree with the majority that section 16-15-102(9) is virtually identical to its federal counterpart. Compare § 16-15-102(9), with 18 U.S.C. § 2518(9) (2017). As the majority notes, we afford great deference to federal authority interpreting the wiretap provisions. Maj. op. ¶ 49 (citing People v. Baez-Lopez, 2014 CO 26, ¶ 17, 322 P.3d 924, 928 ); see also Reg'l Transp. Dist. v. Outdoor Sys., Inc., 34 P.3d 408, 415-17 (Colo. 2001) (interpreting a Colorado statute employing language "essentially identical to that of the Federal Act" with the aid of congressional history and federal judicial interpretations). In its analysis, the majority briefly mentions that the Senate Report on the enacting legislation for § 2518(9), the federal counterpart to section 102, states that its disclosure mandate "would not include a grand jury hearing," maj. op. ¶ 49 (quoting S. Rep. No. 90-1097 (1968), as reprinted in 1968 U.S.C.C.A.N. 2112, 2195), but the majority delves no further into the issue, stating only that it assumed but did not decide that the statute did not apply to grand jury proceedings. Because the federal statute is virtually identical to the Colorado statute, it is worth examining the backdrop against which the federal statute was enacted and how federal courts have approached problems of balancing disclosure against the need for grand jury secrecy and efficiency.
¶62 Grand jury proceedings are different from regular trials. Supreme Court cases decided around the time the federal statute was enacted, and often cited in the accompanying Senate Report, explain at length the need for grand juries to operate apart from the usual procedural rules provided in a full trial. For example, in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court rejected the defendant's argument that he should be allowed to challenge an indictment on the grounds that it was not supported by adequate or competent evidence, holding that such a challenge would "run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." Id. at 364, 76 S.Ct. 406. Thus, in light of a grand jury's limited function, there is a strong preference for limiting review of its actions to preserve confidentiality and efficiency. Such challenges can be better made through motions in limine when and if a defendant is indicted at the conclusion of the grand jury's investigation.[5] In cases where federal courts have been forced to consider disclosure of grand jury proceedings, they have crafted finely graded disclosure regimes designed to balance the integrity of the grand jury's ongoing investigation with the defendant's need for information.
¶63 For example, In re Lochiatto, 497 F.2d 803 (1st Cir. 1974), dealt with contempt proceedings against witnesses for failure to answer questions before a grand jury. The witnesses sought disclosure of the underlying reports and information generated by the grand jury to buttress their Fifth Amendment defense against testifying. See id. at 804-05. In considering the parties' competing concerns, the court balanced the defense's need for the materials to prepare its defense against the government's interest in keeping materials relating to an ongoing investigation confidential. See id. at 806-08. The court devised a multistep process for disclosing law-enforcement-sensitive material. If the government objects to production on secrecy grounds, the district court must determine *68 how to minimize the harmful information disclosed in the materials. See id. at 808. If the material is so sensitive as to be undisclosable in any amount without prejudicing the government, the court may review the material in camera and resolve the challenge itself. See id. Before today, Colorado has similarly tried to balance competing concerns.
¶64 Today the majority rejects these finely graded disclosure regimes by holding that the hearing in this case is a hearing for purposes of section 102(9). Because this hearing is now a hearing under section 102(9), and because this hearing necessarily involves the disclosure of wiretap information to establish the applicability of the crime-fraud exception to attorney-client privilege, the broad and undifferentiated disclosure mandate in section 102(9) applies.
¶65 The majority holds that the present hearing is a section 102(9) hearing by way of strained analogy to this court's decision in P.R. v. District Court, 637 P.2d 346 (Colo. 1981), where this court held that a contempt proceeding for a recalcitrant grand jury witness was sufficiently distinct from the grand jury proceeding itself and was, therefore, not automatically a confidential, closed proceeding. Id. at 350. In P.R., however, the court did not hold that a contempt hearing was a section 102(9) hearing. The issue in P.R. was only whether a contempt hearing could be closed to the public. The court examined the prosecution's attempt to close the contempt proceeding to the public to preserve the integrity of the underlying grand jury investigation. Id. at 353. The accused contemnor refused to answer questions before the grand jury and defended on the grounds that the wiretap, which formed the basis of the prosecutor's questioning, was illegal. Id. at 349. This court balanced the parties' competing interests: On one hand, P.R.'s and the public's interest in a public hearing on the contempt issue, and on the other, the need to protect the integrity of the grand jury process by closing the court. This court decided that, before closing the hearing to the public, the district court must (1) find a clear and present danger to the efficacy of the grand jury proceedings, and (2) find that the prejudicial effects cannot be avoided by any reasonable, less drastic alternative. Id. If the majority had just relied on P.R. for devising a similarly balanced approach to discovery, I would not oppose its use of P.R. However, the majority went further.
¶66 Specifically, the majority relies on P.R. 's holding that a contempt hearing was not a grand jury proceeding, and was thus free from the confidentiality that accompanies grand jury proceedings. Maj. op. ¶ 51 (citing P.R., 637 P.2d at 350-51 ). The majority's brief analogy to P.R., however, goes on to equate a contempt hearing to a hearing about what evidence the grand jury will receive. That is where I disagree. That analogy misses several crucial distinctions between P.R. and the present case. To begin, a contempt proceeding is a distinct adjudicatory process that is filed in a different case from the grand jury and "is designed to vindicate the dignity and authority of a court" by compelling a witness to obey a lawful court order through fines or imprisonment. P.R., 637 P.2d at 350. As such, while the determination of whether to hold P.R. in contempt arose from the grand jury proceeding, that determination had no direct impact on the underlying grand jury proceeding itself. It was only about a potential sanction against P.R. herself. In short, P.R. was about what would happen to P.R. That is very different from the matter before us where the so-called "separate proceeding" will directly and immediately determine what evidence the grand jury actually hears in its ongoing investigation.
¶67 Further distinguishing this case from P.R. is the manner in which the hearing is triggered. In P.R., the prosecutor had complete discretion over whether to initiate the contempt proceeding; here, the defendant initiated the motion to quash. In the contempt matter, the prosecutor overseeing the investigation was able to determine whether to proceed with the contempt proceeding, and accordingly whether the risk to the ongoing investigation outweighed the benefits of a potential determination of contempt. Further, the prosecutor could tailor his disclosure by determining what evidence to offer and what questions to ask. In contrast, a motion to quash is initiated by the defendant *69 on grounds he chooses, and the prosecution has no discretion to assess potential damage to the investigation. In that way, the subpoenaed party determines what issues are in play and what evidence is required to address them. Thus, the prosecution is deprived of both control mechanisms it could use to protect the grand jury proceeding's confidentiality. Hence, I do not find P.R. persuasive.
¶68 The majority focuses on the fact that the prosecution inserted the wiretap intercepts into the proceeding when it filed its notice of hearing. By focusing on the prosecution's disclosure of the wiretapped information, it appears that the majority is referencing the evidentiary concept of "opening the door." That is not the issue here. The focus should be whether a hearing on a motion to quash a grand jury subpoena is part of a grand jury proceeding, not what is relevant at the hearing itself. What the prosecution offered in its notice of hearing is irrelevant to the question at hand. Even if the motion to quash is a distinct proceeding, I am also troubled by the breadth of the majority's holding.
¶69 The majority's decision today rejects the nuanced approach of P.R. and Lochiatto by holding that the current proceeding is a section 102(9) hearing. This ruling means that there is no equivalent of the protection that P.R. provided of closing the hearing if there were a clear and present danger to the grand jury proceeding. Paradoxically, the ruling today means that while the court could, in certain circumstances, close the proceeding to the public pursuant to P.R., it is not able to avoid the wholesale disclosure of ongoing investigatory materials to the investigated party under any circumstances. In effect, a suspect in a criminal investigation can get the wiretap application and documentation, but a reputable reporter for a news organization cannot sit in the courtroom for fear of hearing compromising confidential information. That is simply not a disclosure regime that properly balances the parties' legitimate interests. The majority claims they are not addressing situations where the prosecution objects to turning over grand jury material, maj. op. ¶ 54, but the answer is clear: the prosecution has no recourse. The plain language of the statute controls and requires disclosure.
¶70 The majority tries to limit and qualify its holding by looking at who requested the hearing and who offered the wiretapped evidence, but this is both irrelevant to the question at hand, and not the limiting principle the majority believes it to be. The majority notes that the prosecution in this case asked for a hearing on the motion to quash, maj. op. ¶ 52, but that misses how things work in practice. Once the subpoenaed party has filed a motion, it must be resolved by a judge. Grand juries themselves do not resolve questions of whether evidence is admissible; they receive evidence. Hence, there must be a hearing which, in this instance, required that the prosecution disclose wiretap information.
¶71 The majority also fails to recognize that the evidence the prosecution offers at the hearing is necessarily determined by the grounds the defendant asserts to quash the subpoena. The majority argues that not every subpoena will involve wiretapped information, and so "a prosecutor could avoid triggering the statute by avoiding the use of wiretap contents while contesting a motion to quash." Maj. op. ¶ 54. In reality, unless the prosecution in this case wants to concede the motion to quash, it had to demonstrate to the judge why the crime-fraud exception applies, and that had to be established with the wiretap information, triggering section 102(9). It cannot be maintained that, in response to the motion to quash based on attorney-client privilege, the prosecution could avoid offering or disclosing the wiretap information used to establish the crime-fraud exception. That said, this misses the larger point: A hearing on what evidence the grand jury will hear is part of a grand jury proceeding.
¶72 The core of my disagreement with the majority is that a hearing on the scope of a grand jury subpoena is not distinct from the grand jury proceeding itself. The subpoena in this case was issued based on information gathered during an ongoing investigation, and its purpose was to further that investigation by producing evidence for the grand jury. If the subpoena itself is a grand jury matter, I fail to see how a hearing on its scope is sufficiently differentiated as to be *70 stripped of the normal provisions protecting grand jury confidentiality; the consequences of applying section 102(9) are the same, whether they apply to the subpoena directly or to a hearing on its scope. As previously stated, a hearing concerning evidence to be presented to a grand jury is part of a grand jury proceeding just as a hearing on an evidentiary motion in a criminal trial is part of a criminal proceeding.
¶73 The same logic applies in this case. The current proceedings began when the prosecution subpoenaed records from Brimah and M.W., who then challenged the subpoena. Brimah and M.W. do not challenge whether the subpoena was properly issued, nor whether it really concerns materials responsive to the investigation's purpose. They instead assert that the subpoenaed information is privileged. If no party challenges the notion that the subpoena's issuance furthers an ongoing grand jury investigation, it seems counterintuitive to hold that a hearing on the scope and procedure for discovery of allegedly privileged materials is distinct from the subpoena itself. The determination of privilege here is not related to the unchallenged validity of the wiretaps-and so cannot conceivably bolster Brimah and M.W.'s challenge-yet the majority forces wholesale disclosure.
¶74 The dispositive question is whether the hearing on a motion to quash is a "hearing or other proceeding" under the statute. The particular facts are simply irrelevant to that determination under the plain language of the statute. Indeed, it is telling that the majority concludes that the present hearing falls under section 102(9) before considering the particular facts, and cites no statutory language when doing so. See maj. op. ¶¶ 52-54. Despite the majority's commendable effort to limit its holding, the factors it cites as limiting principles-who requested the hearing, who offered the wiretap information-are simply not relevant to the question of whether the proceeding is part of a grand jury proceeding or not, the sole question governing applicability of section 102(9). Going forward, it is difficult to see how a trial court could avoid section 102(9)'s mandate in an analogous situation. If a case involves wiretaps and a subpoena is challenged, regardless of who requested the hearing, it now appears that section 102(9) applies.
¶75 In my view, the hearing in this case is part of a grand jury proceeding and not a hearing for purposes of section 102(9). By extension, I would also conclude that grand jury proceedings are not subject to section 102(9) because practical experience, legislative history, and federal authority clearly demonstrate that section 102's undifferentiated disclosure mandate is particularly ill-suited to the sensitive, confidential nature of an ongoing grand jury investigation. I would remand to the trial court with instructions to balance Brimah and M.W.'s actual need (if any) for confidential investigatory materials with the potential harm to the grand jury. Because the majority rejects this balanced approach in favor of the blanket disclosure of section 102(9), I respectfully dissent from section III.B.
I am authorized to state that JUSTICE COATS joins in this concurrence in part and dissent in part.

In the end, there is no guarantee that a grand jury investigation will result in an indictment. Additionally, allowing motions practice during a grand jury proceeding would impede the efficient use and thwart the purpose of grand juries:
Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective. The probable result would be protracted interruption of grand jury proceedings, effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law.
United States v. Calandra, 414 U.S. 338, 349-50, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citations omitted).