### In re GRAND JURY PROCEEDINGS.

### Appeal of Nicholas KATSOUROS.

### No. 79–2321.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 28, 1979.

---

22. *See* 42 Fed.Reg. 48518–25 (1977).

John A. Shorter, Jr., New York City, was on brief, for appellant.

Carl S. Rauh,* U. S. Atty., John A. Terry, Joseph F. McSorley and Richard C. Bicki, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before WRIGHT, Chief Judge, and McGOWAN and WALD, Circuit Judges.

Opinion for the court PER CURIAM.

PER CURIAM:

This appeal presents an issue that was left unanswered by *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972): whether a recalcitrant grand jury witness, having been granted use immunity for his testimony, may obtain limited access to government affidavits and other supporting materials in order to challenge the legality of a court-ordered wiretap, where that wiretap provided the basis for questions put to him before the grand jury.

I

Appellant was subpoenaed to testify before the grand jury concerning certain investigations of alleged violations of the gambling and income tax laws. He declined to answer any questions on the matter, invoking his Fifth Amendment privilege against compulsory self-incrimination. Upon motion by the Government the District Court granted appellant use immunity pursuant to 18 U.S.C. §§ 6002–6003 (1976), but appellant again refused to give testimony, this time invoking his rights under the fourth and fifth amendments and under

* United States Attorney at the time the brief was filed.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1976) (the Act). Upon this refusal parties appeared before the District Court and submitted memoranda on the issues raised by appellant's claims under the Act. The Government admitted that the questions propounded to appellant were based on information obtained through a wiretap, and voluntarily gave appellant's counsel a copy of the court order authorizing that wiretap. The order had been signed by Judge Goodrich of the Superior Court of the District of Columbia on December 21, 1977, pursuant to 23 D.C.Code § 547 (1973).

On October 24, 1979, the District Court denied appellant's request for access to "limited materials in support of the wiretap" authorization, and for a "limited" hearing concerning the legality of the wiretap. Nor does it appear from the record that the District Court itself examined the documents other than the court order to determine their legal sufficiency. On the basis of the court order authorizing the wiretap the District Court ruled that appellant had no legal justification for his refusal to testify before the grand jury. The next day, however, appellant again refused to answer questions. In consequence, the court adjudged him in civil contempt and committed him to imprisonment, pursuant to 28 U.S.C. § 1826(a) (1976), for the duration of the grand jury term or until he purges himself of contempt by agreeing to testify. This appeal followed.

## II

Disposition of this case must be based on interpretation of two sections of Title III of the Act. 18 U.S.C. § 2515 (1976) provides:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence * * * before any * * * grand jury * * * if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2518(10)(a) (1976) provides:

Any aggrieved person in any trial, hearing, or proceeding in or before any court * * * may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Read literally, the language of Sections 2515 and 2518(10)(a) seem to support appellant's position. Indeed, the Supreme Court has held that recalcitrant grand jury witnesses "may invoke the prohibition of § 2515 as a defense to contempt charges brought on the basis of their refusal to obey court orders to testify." *Gelbard v. United States, supra,* 408 U.S. at 47, 92 S.Ct. at 2361. However, the Court expressly left open the question whether such witnesses, as here, may refuse to answer questions if the wiretaps have been authorized by court order. *Id.* at 61 n.22, 92 S.Ct. 2357. The reason for this limitation on the holding was explained in a concurring opinion by Mr. Justice White, who provided the necessary fifth vote for the majority. He said:

Where the Government produces a court order for the interception, however, and the witness nevertheless demands a full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings.

*Id.* at 70, 92 S.Ct. at 2372.

Following these comments of Mr. Justice White, and intimations in the legislative history that Congress did not intend to interfere unduly with the informal processes of the grand jury, *see* S.Rep.No. 1097, 90th Cong., 2d Sess. 106 (1968), U.S.Code Cong. & Admin.News 1968, p. 2112 (*citing United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416,

16 L.Ed.2d 510 (1966)), the six Circuit Courts of Appeals facing cases similar to the one at bar[1] uniformly agreed that a recalcitrant witness may invoke Section 2515 as a defense to civil contempt incarceration only when establishing a violation of the section would not significantly impede the functioning of the grand jury. There appears to be no disagreement among the circuits as to the propriety of the District Court's examination *in camera* of the court order authorizing the wiretap in question for facial validity. The circuits differ, however, over the balance which should be struck between protecting the witness's statutory right not to answer questions based upon illegal communications interceptions, and the interest in unhindered progress of the grand jury's investigative function. Different procedural rights and limitations have been adopted reflecting this division.

The Second Circuit, in the leading case of *In re Persico*, 491 F.2d 1156 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), concluded that the recalcitrant witness could invoke Sections 2515 and 2518(10)(a) only in three narrow circumstances which would cause virtually no delay in the grand jury proceedings: "if there is an absence of a necessary court order [to conduct the wiretap surveillance] or if there is a concession from the Government that the surveillance was not in conformity with statutory requirements or if there is a *prior* judicial adjudication that the surveillance was unlawful." *Id.* at 1162 (emphasis in original). The Ninth Circuit has adopted a similar rule.[2] Under this procedure the witness would have no right either to access to the wiretap documents or

to a hearing, however limited, on the legality of the surveillance. Other circuits, while stating that they follow the *Persico* rule, have in fact approved the district court's conducting an *in camera* investigation of the legality of wiretap authorizations. In *In re Grand Jury Proceedings (Worobyzt)*, 522 F.2d 196 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976), the Fifth Circuit decided "to rely on the district judge's in camera determination" where a witness challenged "the facial regularity of a wiretap authorization." *Id.* at 198. The district court had reviewed the wiretap court orders, affidavits, and applications *in camera*, and had found them "facially valid," *id.* at 197; the appellate court did not consider the added protection of adversary participation necessary. The Seventh Circuit adopted a similar rule in *In the Matter of Special February, 1977 Grand Jury (Pavone)*, 570 F.2d 674 (7th Cir.), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).[3] Significantly, even the Second Circuit in *Persico* suggested the necessity of an *in camera* inspection in some form, when it observed: "Inasmuch as [the district court] conducted an in camera inspection to ascertain whether [the court orders] complied with the statute and found that they did comply, Persico received all that he was entitled to receive." 491 F.2d at 1162.

Other circuits have gone an additional step of allowing the recalcitrant witness access to limited materials, provided the legitimate interests of the Government in maintaining secrecy are not endangered. The First Circuit concluded that, unless disclosure would prejudice asserted governmental interests in secrecy, the recalcitrant

---

1. *In the Matter of Special February, 1977 Grand Jury (Pavone)*, 570 F.2d 674 (7th Cir.), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); *In re Contempt Proceedings Against Melickian*, 547 F.2d 416 (8th Cir.), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977); *In re Gordon*, 534 F.2d 197 (9th Cir. 1976); *In re Grand Jury Proceedings (Worobyzt)*, 522 F.2d 196 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976); *Droback v. United States*, 509 F.2d 625 (9th Cir. 1974), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975); *In re*

*Lochiatto*, 497 F.2d 803 (1st Cir. 1974); *In re Persico*, 491 F.2d 1156 (2d Cir.), *cert. denied*, 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974).

2. *Droback, supra*, n.1.

3. The Seventh Circuit also pointed out that in "exceptional circumstances," presumably when there are circumstances strongly suggestive of illegality, it is within the trial court's discretion to conduct an "expanded proceeding." *Pavone, supra* n.1 at 679.

witness invoking Sections 2515 and 2518(10)(a) should be given access to the following limited materials: the authorized wiretap application of the Attorney General or his designate, the affidavits in support of the court order, the court order itself, and an affidavit submitted by the Government indicating the length of time the surveillance was conducted. *In re Lochiatto*, 497 F.2d 803, 808 (1st Cir. 1974). With access to these materials, the witness might be able to establish any of the three grounds for defense under Section 2518(10)(a): unlawful interception, invalid authorization on its face, or nonconforming interception. If those limited materials did not suggest any illegality, any further disclosure or hearing as to their veracity would be unnecessary and an undue hindrance to the functioning of the grand jury. The Eighth Circuit, in most relevant respects, has joined the First in this approach.[4]

### III

■ In passing the Omnibus Crime Control and Safe Streets Act of 1968, Congress understood that it was embarking on a course which could involve grave dangers to the civil liberties of Americans. It therefore sought to permit wiretapping only in carefully controlled circumstances, predicated upon court orders and on specified preconditions. It deliberately decided to forbid the use of the fruits of illegal wiretaps in law enforcement proceedings, including grand juries. As the Supreme Court has observed, Section 2515 "serves not only to protect the privacy of communications, but also to ensure that the courts do not become partners to illegal conduct: the evidentiary prohibition was enacted also 'to protect the integrity of court and administrative proceedings.'" *Gelbard v. United States, su-*

*pra*, 408 U.S. at 51, 92 S.Ct. at 2362–63 (footnote omitted). But the prohibitions of Section 2515 cannot be enforced unless aggrieved persons have some way to learn of the illegality of the wiretap. It is clearly established that a witness before a grand jury has the right not to answer questions based upon illegal surveillance, *id.*, and it is disturbing to consider the possibility of appellant suffering weeks or months of incarceration when an examination of a few documents and a limited hearing might disclose that he was plainly within his rights in refusing to answer. For these reasons, we believe that the *Persico* rule is too restrictive to effectuate the purposes of the Act.

Moreover, we believe that limited disclosure of the materials supporting the court wiretapping authorization, such as that permitted in *Lochiatto*, will not seriously disrupt grand jury proceedings. We do not propose to permit a plenary evidentiary hearing: we do not permit appellant to obtain evidence for the purpose of challenging the veracity of the Government's affidavits, nor do we grant him access to the wiretap evidence itself. Indeed, appellant requests only a "limited hearing" and access to "limited materials in support of the wiretap (i. e., application for the wire interception; affidavits in support of the court order and the court order)." Brief for appellant at 8. Such a limited hearing should consume no more time than any other showing of "just cause" for not answering grand jury questions under 28 U.S.C. § 1826(a) (1976).[5]

■ Accordingly, we conclude that the proper balance between the interests of the grand jury in conducting unimpeded investigations, of the recalcitrant witness in de-

---

4. *In re Contempt Proceedings Against Melickian, supra* note 1, 547 F.2d 416, 420, adopted a "refinement" to *Lochiatto*: "While it is the obligation of the District Court to determine whether delay or secrecy is a factor, it cannot make that determination based on the conclusory allegations of government's counsel. A minimal showing must be made before contemnor's right to inspect and argue can be denied."

5. Moreover, we note that if a recalcitrant witness appeals from an adverse decision of the District Court in such a case, the appeal "shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." 28 U.S.C. § 1826(b) (1976). Since the witness will have been committed to jail, he will not delay in filing an appeal. Appeals by the Government "shall be taken within thirty days after the date the order was entered and shall be diligently prosecuted." 18 U.S.C. § 2518(10)(b) (1976). Thus, even if the District

fending his rights under Section 2515, and of the public in ensuring that the Government not participate in illegal wiretapping requires that appellant be granted access to the limited materials he seeks, and, if necessary, a limited hearing be held, unless the Government objects to the disclosure of these materials, and submits an affidavit establishing that such disclosure would interfere with law enforcement efforts because of a breach in necessary secrecy. In that event, the District Court must examine the materials *in camera* and decide in its discretion what documents or portions thereof should be withheld from appellant, and reach a determination on the legality of the wiretap based on its review of the materials. *See Lochiatto, supra*, 497 F.2d at 808. To minimize interruption in the grand jury investigation, any hearing should be conducted without delay, if possible the same day the documents indicated are provided the witness. The District Court order holding appellant in civil contempt is hereby vacated, and the matter remanded for proceedings not inconsistent with this opinion.

*So ordered.*

Court's original determination regarding the legality of the wiretap is appealed, the attendant delay in the grand jury proceedings will not be substantial.