In re Francis J. DeMONTE, A Witness Before the Special September 1981 Grand Jury.

Francis J. DeMONTE, Witness-Appellant,

v.

UNITED STATES of America, Petitioner-Appellee.

No. 81-2804.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 8, 1981.

Decided Dec. 10, 1981.

Jerome Rotenberg, Louis Carbonaro, Chicago, Ill., for witness-appellant.

Dan K. Webb, U. S. Atty., Chicago, Ill., for petitioner-appellee.

Before SPRECHER, BAUER and CUDAHY, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the district court that adjudged the appellant, a recalcitrant grand jury witness, in civil contempt and directed that he be confined pursuant to 28 U.S.C. § 1826. For the reasons stated below, we vacate that order and remand the matter for further proceedings.

The appellant, Francis J. DeMonte, was originally subpoenaed to appear before the Special September 1978 Grand Jury on July 1, 1981. He responded to that subpoena but refused to answer questions, asserting his Fifth Amendment privilege against self-incrimination. He also objected to the questions on the ground that they were the product of illegal electronic surveillance. At that time, the government attorney in charge of the investigation sought approval

from the Department of Justice to apply for a court order granting the appellant immunity.

Subsequently, DeMonte was subpoenaed to appear before the Special September 1981 Grand Jury on October 14, 1981.[1] Again, he asserted his Fifth Amendment privilege. Following that refusal to testify, the government presented to the district court a petition for an order granting the appellant immunity pursuant to 18 U.S.C. §§ 6002, 6003. At the hearing on the immunity petition, the appellant restated his claim that he had been the subject of illegal electronic surveillance and asked for limited access to government documents which purportedly authorized such surveillance. The court disallowed that argument as premature and signed the immunity order.

The appellant was returned to the grand jury, but for the third time he refused to testify. Despite the grant of immunity, he continued to assert what he claimed was his Fifth Amendment privilege. He also repeated his claim that his subpoena was "based on illegal wire tapping." The government responded by filing a petition for contempt.

At the contempt hearing, the appellant initially contended that he should not be compelled to testify because of his confusion regarding the scope of his immunity. The court rejected that argument. At that point, the government responded to the appellant's prior wiretap allegations by presenting an affidavit, sworn to by the attorney in charge of the investigation, which admitted that the appellant had been the subject of electronic surveillance, but which stated that all electronic interceptions of appellant's communications had been authorized by court order.[2] The government filed a set of sealed documents to support its claim that the surveillance had been lawful.[3] The government's affidavit also denied that any occurrences of electronic surveillance, other than those detailed in the documents, had taken place.[4] The appellant moved for permission to examine the supporting materials. The court denied that request and, instead, made an *in camera* review of the documents. The court found the intercepts in accordance with the authorizing court orders and rejected the wiretap objection as a basis for the appellant's refusal to testify.

The appellant then objected to the sufficiency of the government affidavit. At that time, he took the stand and gave further testimony detailing his grounds for suspecting that he was the subject of illegal electronic surveillance. The court, again relying on the *in camera* documents, reaffirmed its ruling on the wiretap objection.

Following the hearing, the district court entered a contempt order, dated October 14, 1981, committing the appellant to the custody of the United States Marshal until he obeyed the court's order or the September 1981 grand jury expired.

On October 28, 1981, the appellant filed a petition to stay the order of commitment and to set bail pending appeal. On October 29, 1981, the court granted that motion.

---

1. The September 1978 Grand Jury expired on September 1, 1981. At that time, the district court transferred certain cases, including the one at issue, to the new grand jury.

2. The affidavit states in pertinent part:

   8. That on October 14, 1981, I requested that a review be made in Washington, D.C., of the FBI Electronic Surveillance Indices concerning Francis J. DeMonte. I was informed by Special Agent James L. Dietz that a review of the records indicated that the only communications of Mr. DeMonte intercepted by electronic surveillance were authorized by former Chief Judge James B. Parsons.

3. The materials included: the orders signed by Judge Parsons; the applications for the orders; affidavits in support of the applications; and various progress reports relating to the court-ordered interceptions.

4. The affidavit states in pertinent part:

   10. That the undersigned possesses no information supporting Mr. DeMonte's allegations which would indicate that conversations of Mr. DeMonte were heard by any other electronic surveillance or that any premises owned, leased, or licensed by Mr. DeMonte were covered by electronic surveillance, legal or otherwise, other than that referred to above.

The appellant filed his notice of appeal from the October 14 order on November 10, 1981.

In this appeal, the appellant presents four questions for review: (1) whether the three month delay in the government's application for an order granting the appellant immunity denied him due process of law; (2) whether the appellant was justified in refusing to answer questions before the grand jury because of his alleged confusion as to the scope of his immunity; (3) whether the affidavit filed by the government in response to the appellant's assertion that the questions asked to him before the grand jury were the product of illegal electronic surveillance was sufficient; and (4) whether the district court erred in denying the appellant limited access to documents presented by the government to support its claim that the electronic surveillance of the appellant was lawful.

## I

█ The appellant's due process claim is based on the premise that the "obvious reason that immunity was not given DeMonte during the life of the Special September 1978 Grand Jury was the fact that if he did not testify after a grant of immunity at that time, he would have been subject to incarceration for only a very short period of time whereas if immunity were delayed until such time as a new Grand Jury were impaneled, his refusal to answer questions could result in a much greater period of imprisonment."[5] (Appellant's Brief at 8.)

The appellant attempts to analogize that delay in the government's application for a grant of immunity to instances of prosecutorial vindictiveness. *E.g., Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Casting the delay in those terms, he argues that the government's bad faith undermined the power of the second grand jury and justified his refusal to testify. We reject this argument.

This court, in the context of allegations of selective or vindictive prosecutions, has held that to establish a *prima facie* case of prosecutorial bad faith a defendant must "allege[ ] intentional purposeful discrimination and present[ ] facts sufficient to raise a reasonable doubt about the prosecutor's purpose ..." *United States v. Falk*, 479 F.2d 616, 620–21 (7th Cir. 1973) (en banc); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). Absent such a showing, the presumption of good faith "remains undisturbed." *United States v. Niemiec*, 611 F.2d 1207, 1209 (7th Cir. 1980).

The only showing that the appellant has made in this case is: (1) that there was a three month delay between his first grand jury appearance and the government's application for a grant of immunity, and (2) that because of his refusal to testify before the second grand jury he can be confined for up to eighteen months, whereas had he been committed in contempt during the first grand jury he would have been confined for less than two months.[6] His assertion that the "obvious reason" for the delay was prosecutorial bad faith is simply conclusory. In fact, at the appellant's bail hearing, the government offered an alternative explanation for the delay. It stated that the internal administrative process necessary to gain the approval of the United States Assistant Attorney General to make the request for immunity had consumed the three month period. The district court, weighing the arguments of both parties,

---

**5.** 28 U.S.C. § 1826(a)(2) provides that the period of confinement for contempt shall not exceed "the term of the grand jury including extensions, before which such refusal to comply with the court order occurred, [and] in no event shall such confinement exceed eighteen months."

**6.** Note that while this second point on its face appears to indicate a real disparity, it ignores the fact that even if the witness had been committed for the remaining two months of the life of the 1978 grand jury and then released, the government still could have subpoenaed him to testify before the 1981 grand jury. And, had he refused to testify, he could have been recommitted for an additional sixteen month period. *Shillitani v. United States*, 384 U.S. 364, 371 n. 8, 86 S.Ct. 1531, 372 n. 8, 16 L.Ed.2d 622 (1966).

found no reason to support a finding of government misconduct. On the basis of the record in this case, we are also unable to conclude that the appellant has met his burden of proving bad faith or vindictiveness. *United States v. Kember,* 648 F.2d 1354, 1372 (D.C.Cir.1980).

## II

■ The appellant also attempts to justify his refusal to testify on the ground that he was confused as to the scope of the immunity granted to him. He cites as the source of his confusion a discrepancy in the description of the substantive scope of the grand jury inquiry contained in the advice of rights notice which he received with his subpoena.[7] He urges that he was unclear whether his immunity extended to some or all of the statutory provisions listed in that description.

This argument seriously misconstrues the immunity statute and must also fail.

The appellant was granted immunity under 18 U.S.C. §§ 6002, 6003. Section 6002 explains the scope of such immunity, stating in pertinent part:

no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in *any criminal case,* except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

7. The advice of rights notice stated that the grand jury's investigation related to possible violations of 18 U.S.C. § 7203 and 26 U.S.C. § 7203, whereas the government's petition for a grant of immunity stated that the investigation related to possible violations of 18 U.S.C. §§ 1955, 892 and 894. The government explained at the contempt hearing that, due to a typographical error, the advice of rights notice misstated 18 U.S.C. § 1955 as § 7203.

8. 18 U.S.C. § 3504(a)(1) provides that in any grand jury proceeding:

upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall

(Emphasis added.) The immunity granted to the appellant was in no way limited by the scope of the grand jury's inquiry. Rather, it prohibited the prosecutorial use of his compelled testimony "in *any* respect." *Kastigar v. United States,* 406 U.S. 441, 454, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). The district court explained this implication of the immunity to the appellant. Because his immunity was coextensive with the scope of his privilege against self-incrimination, it was sufficient to compel testimony over a claim of that privilege. *Id.*

## III

■ The appellant's third argument questions the sufficiency of the affidavit submitted by the government, pursuant to 18 U.S.C. § 3504, in response to the appellant's allegation of illegal electronic surveillance. Upon such a claim by a grand jury witness, the government is required to "affirm or deny the occurrence of the allegedly unlawful act."[8] As noted earlier, the affidavit in this case, sworn to by the government attorney in charge of the investigation, contained both an admission that the appellant had been the subject of specific authorized electronic surveillance and a denial that the appellant had been the subject of any other interceptions. *See* notes 2, 3, *supra.* The appellant's challenge to the sufficiency of the document relates primarily to that portion of the government's response that denied the occurrence of electronic surveillance.[9] He raises several con-

affirm or deny the occurrence of the alleged unlawful act.

The use of illegal electronic surveillance is such an "unlawful act." § 3504(b).

9. Note that the government must "affirm or deny the occurrence of the allegedly unlawful act." That response involves two separate components: the occurrence of the act, and the legality of the act. (1) If the government admits both the occurrence of the act and its illegality, the witness has a defense to a contempt petition. *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). (2) If the government admits the occurrence of the act but denies its illegality, further inquiry is necessary. *See IV, infra.* (3) If, however, the government denies the occurrence of the act, the witness must answer. *Gelbard,* 408

cerns. First, he objects to the fact that the document was sworn to only by the prosecutor and not by other persons with personal knowledge of the scope of the surveillance which did occur. Second, he contests the fact that the denial was based on an assertion by the government attorney that she "possesses no information supporting [the appellant's] allegations." He argues, relying primarily on *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973), that the affidavit should have contained a detailed factual basis supporting the denial. Finally, he questions the propriety of a denial based solely on an investigation of F.B.I. Electronic Surveillance Indices and claims that the government should have checked other agencies. Although, in other contexts, these concerns might dictate the need for a more extensive government response, on the facts of this case, we find that the affidavit was a sufficient denial under section 3504(a)(1).

This court has recognized that an affidavit sworn to by the prosecutor personally in charge of an investigation may, in certain instances, suffice as a government denial of electronic surveillance. *Korman v. United States,* 486 F.2d 926, 931 (7th Cir. 1973). Further, this court has also acknowledged that at times such a denial may be based on the "personal knowledge" of the government attorney. *Matter of Special February 1975 Grand Jury (Lopez),* 565 F.2d 407, 413–14 (7th Cir. 1977). Such a minimal response is clearly appropriate when the movant's claim lacks any evidentiary basis. *Id.* at 414 n.9.

In this case, the government's affidavit was submitted as a response to the appellant's initial general allegation of illegal electronic surveillance. As such, it satisfied the minimum requirements of the statute. The appellant's attempt to superimpose the more rigorous requirements developed in *United States v. Alter, supra,* must fail. As this court noted in *Lopez,* 565 F.2d at 414 n.9:

> *Alter* does not stand for the proposition that any affidavit by a witness claiming electronic surveillance . . . will operate to shift the burden to the government. The court in *Alter* identified five specific categories of information the affidavit must reveal in order to raise a *prima facie* issue of electronic surveillance.[10] . . . [T]he court found that because the affiant made a sufficiently concrete and specific showing of interference with phone calls and possible FBI involvement, the burden was shifted to the government squarely to affirm or deny.

(Footnote added.) The present appellant's failure to make a "concrete and specific showing" of probable electronic surveillance outside of the scope of that admitted by the government makes *Alter* inapplicable. *Id.*

While it is true that the appellant later took the stand and gave a more specific evidentiary basis for his suspicions concerning electronic surveillance,[11] the court at that point had the benefit of both the government's affidavit and the supporting materi-

---

U.S. at 71, 92 S.Ct. at 2373 (White, J., concurring). Thus, the sufficiency of the affidavit is most critical in the context of a denial of the occurrence of the act.

**10.** The movant must show, *inter alia*: (1) specific facts that reasonably lead to the occurrence of the wiretap; (2) dates of such suspected surveillance; (3) the identity of persons who were party to the communications allegedly intercepted; and (4) facts showing some connection between possible electronic surveillance and the grand jury witness.

**11.** The district court appraised the appellant's testimony as follows:

> [W]hat I have heard is circumstances which lead Mr. DeMonte to believe that he has been the subject of surveillance by what he be-

lieves are law enforcement agents. He doesn't know whom . . . He received notices from the telephone company which do not indicate, based upon my knowledge of the type of form of these notices, that there was any electronic eavesdropping going on, but merely that inquiries have been made on the record activity of the telephone calls and billings and so forth. And finally, that he has heard clicks on his line at both his home and his business which lead him to suspect some sort of electronic surveillance by whom, neither he nor I know and whether it actually did indicate surveillance nobody knows.
(Proceedings of 10/13/81 at 48–49.)

als. It found that the appellant's additional testimony did not necessitate a further government response. The appellant has presented no reason why we should question that judgment.

Finally, in light of the lack of specificity of the appellant's allegation, it was also unnecessary for the government to conduct a general search of all investigative agencies. *Lopez*, 565 F.2d at 416.

## IV

■ The appellant's final argument relates to his request at the contempt hearing for limited access to the documents submitted by the government to support its claim that the electronic surveillance was lawful.[12] The district court, relying on *Matter of Special February, 1977 Grand Jury (Pavone)*, 570 F.2d 674 (7th Cir.), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), denied that request and, instead, conducted an *in camera* review of the materials. The appellant, citing several cases from other circuits that have dealt specifically with the "limited access" question,[13] contends that his narrow request should not have been rejected. For the reasons noted below, it appears that, absent a specific objection by the government, the witness should have been given access to some of those materials. Thus, we vacate the order holding the appellant in contempt and remand the matter for further proceedings.

## A

In *Pavone*, this court evaluated the discovery request of a recalcitrant grand jury witness in a factual setting similar to the case at bar. Pavone, after receiving a grant of immunity under 18 U.S.C. §§ 6002, 6003, refused to testify before a grand jury asserting that the inquiry, which he alleged was based on illegal electronic surveillance, was unlawful under 18 U.S.C. § 2515.[14] The government responded by filing a petition for contempt. At the contempt hearing, the government conceded that Pavone had been the subject of a wiretap authorized by a court order and submitted materials to support that claim. Pavone then made his discovery request.

That request, however, was strikingly different from the request we are asked to evaluate. Pavone moved for "full discovery." He sought:

the opportunity to hear all the original tape recordings of the intercepted conversations, and the opportunity to examine the transcripts of the conversations, [and] also any logs or summarizations or reports quoting the intercepted communications, copies of affidavits, and applications for court authorizations, copies of any periodic reports of the agents intercepting the conversations, and the order of the court authorizing the interception.

*Pavone*, 570 F.2d at 676. We denied his motion.

In reaching that result, we identified four considerations that militate against the grant of full discovery: (1) delay in the grand jury proceedings; (2) possible exposure of sensitive materials affecting others; (3) jeopardy to witnesses and informants; and (4) the danger of educating witnesses and associates and suggesting to receptive minds that testimony be tailored to only that which is believed to be already known to the grand jury. *Id.* at 678. We found,

---

12. *See* note 3, *supra*.

13. *In re Harkins*, 624 F.2d 1160 (3d Cir. 1980); *In re Grand Jury Proceedings (Katsouros)*, 613 F.2d 1171 (D.C.Cir.1979); *Melickian v. United States*, 547 F.2d 416 (8th Cir. 1977); and *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974).

14. Section 2515 provides:
Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

on the facts of that case, that those considerations precluded "full discovery" and the need for an "extended hearing." However, we also recognized that, under 18 U.S.C. § 2518(10)(a),[15] a district court judge has discretion to control discovery of the contents of the interceptions and, in "exceptional" cases, to provide an expanded proceeding. *Id.* at 677 n.5, 678, 679.

### B

Although several cases decided since *Pavone* have simply aligned that case with other "no access" cases, *see In re Harkins,* 624 F.2d at 1166; *In re Grand Jury Proceedings (Katsouros),* 613 F.2d at 1174, a proper understanding of *Pavone* can be gained only by viewing it within a broader continuum of cases which have analyzed the implications of sections 2515 and 2518(10)(a) in grand jury proceedings.[16]

Prior to *Pavone,* there were three major decisions in this area. In *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court staked out the endpoints of the continuum. The Court, proceeding on the assumption that the electronic surveillance in that case was illegal, held that a recalcitrant grand jury witness can invoke the prohibition of section 2515 as a defense to a charge of contempt.[17] Thus, it rejected the extreme position that section 2515 has no applicability in such proceedings. *Gelbard* also contained specific indications that the position at the opposite end of the continuum, calling for a "full-blown suppression hearing to determine the legality of the [authorizing court] order" is unacceptable. *Id.* at 70, 192 S.Ct. 2372 (White, J., concurring); *see also id.* at 75–77, 92 S.Ct. at 2374–75 (Rehnquist, J., dissenting). The Court, however, left open the question of the rights of a grand jury witness at a contempt hearing in a case when the surveillance has been undertaken pursuant to a court order. *Id.* at 61 n.22, 92 S.Ct. at 2368 n.22. Two other pre-*Pavone* cases attempted to fill in that middle ground.

In *In re Persico,* 491 F.2d 1156 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974), the Second Circuit held that a recalcitrant grand jury witness who refuses to testify "because he claims he is entitled to a hearing to ascertain whether the questions posed are the product of unlawful electronic surveillance . . . is not entitled to a plenary hearing to test the legality of that surveillance." *Id.* at 1162. The court found section 2518(10)(a) to be inapplicable in contempt hearings arising from grand jury proceedings. It interpreted sec-

---

**15.** Section 2518(10)(a) provides:

Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the con-

tents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

**16.** Note that § 2515 creates the statutory exclusionary rule, while § 2518(10) defines the method of enforcing that prohibition.

**17.** The Court noted that while § 2518(10)(a) does not provide for suppression motions before a grand jury, "motions to suppress evidence to be presented to a grand jury would presumably be made in court," where § 2518(10)(a) is applicable. *Id.* at 59–61 and n.20, 92 S.Ct. at 2367 and n.20.

tion 2515 as requiring exclusion only in three specific instances: (1) when the invalidity of the surveillance is patent; (2) when the government concedes that the surveillance was not in conformity with the statute; or (3) when there is a prior judicial adjudication that the surveillance was unlawful. Finally, the court found that the trial judge's *in camera* review of the documents was sufficient to guarantee that the case did not fall within one of those categories. Thus, *Persico* proposed that section 2515 is applicable only when the judge recognizes the illegality of the surveillance independently of a challenge by the witness. *See also In re Gordon*, 534 F.2d 197 (9th Cir. 1976); *In re Grand Jury Proceedings (Worobyzt)*, 522 F.2d 196 (5th Cir. 1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976).

An alternative approach was suggested in *In re Lochiatto*, 497 F.2d 803 (1st Cir. 1974). The First Circuit acknowledged the general policy reasons that militate against full disclosure, i.e., the need to minimize delay and secure the government's interest in secrecy. However, it also recognized an important countervailing concern, the need to protect a defendant's right to assert the defense established by section 2515.[18] Facing that "triple objective," the court read section 2518(10)(a) more expansively,[19] and found that the protection of section 2515 is not limited to cases of patent facial irregularities. The court proposed the following four level framework as a means for developing cases when the government admits the fact of surveillance: (1) Presumptively, the witness should be given an opportunity to inspect these limited materials: the authorized application of the Attorney General or his designate, the affidavits in support of the order, the court order itself, and an affidavit submitted by the government indicating the length of time the surveillance was conducted.[20] (2) If, however, the government interposes an objection on secrecy grounds, the district court must determine whether the secret information can be deleted or summarized. (3) If the court determines that the objection can be circumvented, access should be granted. (4) If, however, the court, in its discretion, determines that any access would prejudice the government, it can deny access, but it then must review the material *in camera* to determine the constitutional and statutory validity of the surveillance. The court concluded by noting that "[t]his approach vests the district court with wide discretion." *Id.* at 808.

At this point, *Pavone* was decided. Although the literal result in that case—denial of full discovery and the use of an *in camera* review—paralleled *Persico*, our analysis did not track that case. In fact, our emphasis on the discretion of the trial judge to control discovery under section 2518(10)(a), was a departure from the reasoning of *Persico*. That aspect of *Pavone* was more closely allied with the reasoning of *Lochiatto*.[21] *See also Gelbard v. United States*, 408 U.S. at 60–61, 92 S.Ct. at 2367. Our result in *Pavone* was dictated more by the nature of the discovery request in that case.

**18.** The court referred to "the articulated, congressional skepticism about electronic monitoring, as an insidious invasion of privacy to be singled out for special scrutiny and safeguards." *Id.* at 807.

**19.** The court noted that "although § 2518(10)(a) gives no standing to a prospective grand jury witness to be heard on a motion to suppress, § 2515 allows such a witness to assert, in defense of a contempt proceeding, the grounds enumerated in § 2518(10)(a)(i), (ii), (iii) . . . ." *Id.* at 806. *Compare* note 17, *supra*.

**20.** The court cautioned, however, that "[n]o evidence need be provided the defendant for the purpose of litigating the issues of truth of statements made by affiants." *Id.* at 808.

**21.** Note that while the language of § 2518(10)(a) refers only to the discretion of the trial judge to make available "portions of the intercepted communication or evidence derived therefrom," for that section to provide a meaningful opportunity for a defendant to establish a § 2515 defense, that discretion must also extend to the judge's control of the government's supporting materials.

After *Pavone*, two other circuits, faced specifically with "limited access" requests, followed the lead of *Lochiatto*. *See In re Harkins*, 624 F.2d 1160 (3d Cir. 1980); *In re Grand Jury Proceeding (Katsouros)*, 613 F.2d 1171 (D.C.Cir.1979). Both cases spoke of the need to balance the three interests articulated in *Lochiatto* : effective grand jury investigation, government secrecy, and a grand jury witness's right not to answer questions based upon illegal surveillance. Both cases saw the rule of "limited access" as the optimum way to protect those interests. And both cases emphasized that, in this sensitive area, the "limitation" as well as the "access" are crucial to this balance.[22]

## C

Evaluating the present case in the context of this continuum, it appears, in light of the appellant's limited request, that the better rule would be to presumptively permit him some access. Such a rule will not undermine the policy considerations noted in *Pavone*. Delay in grand jury proceedings will not be appreciably increased.[23] Secrecy concerns will be protected by the government's ability to rebut the presumption of limited access.[24] Moreover, the rule reflects on appreciation of the countervailing individual interest at stake. Finally, the rule will help to refine the exercise of judicial discretion which is so vital in this area. *Pavone* recognized the need for such discretion, but provided no guidelines. The trial court was left to evaluate the legality of the surveillance without the insight of adversarial development. A "limited access" rule will serve to inform the exercise of that discretion. By utilizing a presumption of limited disclosure, but allowing the government to rebut that presumption, a court will be better able to focus on the pivotal questions of an individual case. In a case when total nondisclosure is truly important, the government will indicate specific reasons why the trial judge should preclude access. On the other hand, in a case when there is an irregularity which is not patent, a witness may be able to explain why the court, in its discretion, should disclose additional information.

For the reasons noted above, we adopt the "limited access" rule outlined in *Lochiatto*. *See* pp. 19–20, *supra*.[25] Because the appellant was not given such access, we vacate the district court's order holding him in contempt and remand the matter for further proceedings.[26]

---

**22.** In *In re Harkins*, the court stated, "[W]e do not believe that the witness should have a right to introduce his own evidence testing the factual sufficiency of the evidence contained in the documents." 624 F.2d at 1167. Likewise, in *Katsouros*, the court noted, "We do not propose to permit a plenary evidentiary hearing: we do not permit appellant to obtain evidence for the purpose of challenging the veracity of the Government's affidavits, nor do we grant him access to the wiretap evidence itself." 613 F.2d at 1175.

**23.** Already there is some delay from the contempt hearing itself. "To minimize [further] interruption in the grand jury investigation, any [additional] hearing should be conducted without delay, if possible the same day the documents indicated are provided the witness."

*In re Grand Jury Proceedings (Katsouros)*, 613 F.2d at 1176.

**24.** Note that, if the government does object, the trial court's preliminary determination regarding the effect of the presumption will itself be made *in camera*.

**25.** We read this rule to incorporate the limitations described in notes 20, 22, 23 and 24, *supra*.

**26.** Because the government has not had an opportunity to interject a specific substantive objection, we do not decide the actual effect of the presumption of "limited access" in this case.