Charles A. **KENNEY,**
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 02A03–8908–CR–344.

Court of Appeals of Indiana,
Third District.

Feb. 13, 1990.

Thomas R. Dahlberg, Fort Wayne, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Charles A. Kenney (Kenney) appeals his conviction following a jury trial for possession of a controlled substance in violation of IC 35–48–4–7, a class D felony, and

dealing in cocaine in violation of IC 35–48–4–1(a)(1), a class B felony. We affirm.

## ISSUES

Restated, Kenney's appeal presents the following four [1] issues:

(1) Whether the trial court erred by allowing the state to amend the information to add a count for dealing in cocaine;

(2) Whether the trial court erred in denying Kenney's motion to suppress evidence based on the argument that his vehicle was improperly stopped and searched in violation of Kenney's fourth amendment rights;

(3) Whether the trial court erred by allowing into evidence the testimony of the police officer who allegedly purchased the cocaine from Kenney and who later identified Kenney at the scene of the arrest; and

(4) Whether the state failed to offer evidence of Kenney's predisposition to deal in cocaine to overcome the defense of entrapment.

## FACTS

On the night of October 12, 1988 members of the Allen County and Fort Wayne Police Departments, as well as the Federal Drug Task Force, joined together to interrupt drug purchases and sales on Gay Street in Fort Wayne. While cruising Gay Street a confidential source accompanied by a disguised ACPD officer, Scott Huffine, were flagged down by two black males who offered to sell them crack cocaine. Huffine gave two twenty dollar bills, the serial numbers of which had been previously recorded, to his unidentified assistant who in turn exchanged through the rolled down car window that money for two rocks of crack cocaine. Huffine and the confidential assistant then drove to a near-

---

1. Kenney attempts to raise three additional issues in the last three sentences of his brief (Appellant's Brief, p. 21). Those issues include the sufficiency of the evidence, prosecutorial misconduct, and racially motivated use of peremptory challenges. Still other issues can only be found in Kenney's statement of the issues presented for review (Appellant's Brief, p. 7).

Kenney's failure to present a cogent argument in support of those contentions and to cite us to those portions of the record applicable to the errors alleged operates as a waiver of those issues. *See* Ind.R.App.P. 8.3(A)(7); *see also Callahan v. State* (1988), Ind., 527 N.E.2d 1133, 1141.

by area to deliver the unused money and the material purchased to another officer to establish the chain of custody and to field test the material to determine whether it was cocaine.

The whole transaction was witnessed by other police officers, Detectives Bostic and Kelley, who were watching from a house on the street corner. Officers Lucker and Harris, ready to intervene if a buy or arrest went sour, sat in an unmarked car around the corner. The hope was to arrange another buy, but Bostic and Kelley reported that the suspected dealer[2] got into a vehicle and was preparing to leave the area. He was allowed to do so because the officers did not wish to spoil the opportunity for other drug related arrests in the vicinity that evening.

Officers Lucker and Harris followed the suspect's car, but then backed off to allow a marked police vehicle to actually make the stop. Detective Huffine then arrived at the scene to identify the driver as the one who made the sale. Huffine picked Kenney as the dealer from the four persons in the vehicle. Two of the others were not taken into custody; the third was arrested pursuant to an outstanding traffic court warrant. The serialized money was recovered from Kenney's pants pocket and a vial containing more crack was found in the pocket of the jacket he wore. Kenney claimed at trial that the money came from one of the other persons in the car as payment for errands Kenney was beginning to run when stopped. Kenney also claimed that the jacket belonged to this other person and that Kenney put it on, after leaving Gay Street, because he was cold.

Kenney was initially charged with two counts of possession of a controlled substance. One of these counts was subsequently dropped and a count for dealing was added. Kenney's motions to dismiss the dealing charge and to suppress the evidence gained as a result of the stop were denied and a jury trial was held. The

jury returned a guilty verdict on both counts. The trial court vacated the verdict on Count I on the grounds that both counts were based on the same operative facts. (R. 65). Kenney was sentenced to ten years on the dealing charge.

*ISSUE I: Prosecutorial Vindictiveness*

■ Kenney claims that the prosecutor filed the count for dealing in response to a defense motion to suppress evidence obtained following the stop of Kenney's vehicle. We address the trial court's denial of the motion to suppress under Issue II. Kenney argues that the substitution of the dealing count for the possession charge was the product of prosecutorial vindictiveness. The prosecution responded, at the hearing in the trial court and in this appeal, that the dealing charge was added when defense counsel inadvertently alerted the prosecution to a previously unnoted police report which allegedly detailed the circumstances of Kenney's arrest, particularly the details concerning Kenney's having approached the undercover officer rather than vice versa. Those facts, the state argued, negate the evidentiary problems often associated with an entrapment defense with regard to the accused's predisposition to commit the crime in question. *See* IC 35–41–3–9.

Kenney offers the Seventh Circuit's 1987 opinion in *United States v. Whaley* for the proposition that in the pretrial setting it is violative of the due process clause to add charges in retaliation for the accused's exercise of constitutional rights. 830 F.2d 1469. *See also Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1090. Kenney argues from *Whaley* and associated precedents that his conviction for dealing in cocaine must be vacated because the January 3, 1989 information for dealing was filed solely in response to his December 12, 1988 motion to suppress. Kenney argues that no new evidence was uncovered during that period.

The decision in *Whaley* rests upon the holding of the Supreme Court in *United*

---

**2.** The record does not indicate whether the second suspect, who approached the car from the passenger side and who was apparently not part of the transaction on the driver's side of the vehicle, was apprehended.

*States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74. In *Goodwin* it was held that the addition of more serious charges following a state court defendant's invocation of pre-trial procedures was not a scenario in which a reasonable likelihood of vindictiveness exists so as to warrant a presumption that the inclusion of such charge was retaliatory in nature and thereby in violation of due process rights as protected by the fourteenth amendment. The *Goodwin* court recognized that the initial charging decision "should not freeze future conduct" as a prosecutor "should remain free before trial to exercise the broad discretion entrusted to him...." *Goodwin, supra,* 457 U.S. at 383, 102 S.Ct. at 2493, 73 L.Ed.2d at 86. *See also Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (unrealistic to assume that prosecutor will penalize or deter pretrial motions by filing additional charges).

Based upon *Goodwin* and prior opinions of the Seventh Circuit, the *Whaley* court ruled that:

> [T]o establish a *prima facie* case of prosecutorial bad faith a defendant must 'allege[ ] intentional purposeful discrimination and present[ ] facts sufficient to raise a reasonable doubt about the prosecutor's purpose....' Absent such a showing, the presumption of good faith 'remains undisturbed.'

(citations omitted). *In re DeMonte* (7th Cir.1981), 667 F.2d 590, 593 *quoted in Whaley, supra,* 830 F.2d at 1478. The trial court held a hearing to allow Kenney to make this showing. After taking the testimony under advisement, the trial court ruled that Kenney failed to show any causal connection between his motion to suppress and the charging decision. The court concluded that the prosecutor's office "made a legitimate, though tardy, decision" that their evidence supported a dealing charge (R. p. 44). Kenney has not sufficiently demonstrated how that conclusion was erroneous.

### ISSUE II: *Motion to Suppress*

■ Kenney timely moved the trial court to suppress any evidence gained as a result of the search of Kenney's vehicle and the "vigorous" pat down search of Kenney himself. That motion was properly denied.

Apparently there was some initial confusion at the scene of the stop and possibly even at the police station as to whether Kenney had been stopped for obstruction of traffic—a charge levied against other persons who slowed or stopped along Gay Street in attempts . to purchase drugs. Kenney was not ever charged with that traffic violation. At the suppression hearing, vice squad officers testified that the decision to arrest the suspect was made before he entered the vehicle or committed the traffic violation. It was merely a matter of waiting on Kenney to travel a sufficient distance from the Gay Street observation area so as not to spoil the operation. Kenney was not stopped for a traffic violation, so his references to the limits on a search in that context are inapposite. Kenney was, as the trial court found, stopped by officers who directly and indirectly had probable cause to believe he had committed a felony. (R. p. 43). The evidence gained incident to this legal, though warrantless, search included the serialized twenty dollar bills and a small quantity of crack cocaine. When, as here, a lawful custodial arrest is made, the police may conduct a warrantless, contemporaneous search of the person arrested and of the immediately surrounding area. *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. The suppression motion was properly denied.

### ISSUE III: *"Show–Up" Identification of Kenney at Scene of Arrest*

■ After the purchase of the crack, Officer Huffine and his unidentified informant met briefly with Huffine's superior and an evidentiary officer. In the meanwhile the person seen approaching the Huffine vehicle, who had been under continuous surveillance by Detectives Bostic and Kelley, prepared to leave the area. Detectives Bostic and Kelley radioed that information to Officers Lucker and Harris who followed the suspect's car until it was stopped at their request by a marked unit. Officer Huffine, enroute since learning of

the suspect's movement, arrived at the arrest scene almost immediately. There was certainly less than an hour between the purchase and the arrest, more likely a half hour. Huffine identified Kenney as the seller of the contraband. It is unclear as to whether Huffine was informed that Kenney possessed the serialized money and more crack cocaine before or after Huffine made the identification. (R. pp. 126, 132). Kenney argues that this out-of-court identification was so suggestive as to render it inadmissible on due process grounds.

Show up identifications are not *per se* impermissible. *Russell v. State* (1988), Ind., 519 N.E.2d 549, 552. Our supreme court has held that "show-ups" are entirely proper when an arrest is made a very short time after a crime has been committed and that it is " 'valuable to have the witness view a suspect while the image of the perpetrator is fresh in the witness's mind; indeed, the immediacy of the incident substantially diminishes the potential for misidentification.' " *Hill v. State* (1982), Ind., 442 N.E.2d 1049, 1052 *quoted in Dishman v. State* (1988), Ind., 525 N.E.2d 284, 285. *See also Glover v. State* (1982), Ind., 441 N.E.2d 1360 (show-up conducted a few hours after commission of crime).

We are inclined to agree with the state's argument as made before the trial court that somewhat different standards for adjudging the coerciveness of layperson "show-up" identifications may apply to persons such as Huffine whose jobs routinely require them to make identifications in similarly "coercive" situations. More importantly, however, based upon the totality of the circumstances here including, particularly, the fact that Huffine had just previously purchased the contraband from the suspect and that the transaction was conducted virtually face to face, we cannot find that Huffine's testimony concerning his pre-trial or at-trial identifications of Kenney were improperly allowed into evidence.

*ISSUE IV: Entrapment*

Indiana has codified the entrapment defense at IC 35–41–3–9. Kenney argues that the state failed to offer evidence of his predisposition to deal in cocaine. Kenney asserts that whenever a dealing charge is brought and the transaction in question involves a police officer, the entrapment defense is raised as a matter of law. We find his argument unavailing. Under the statute and applicable case law "merely affording a person the opportunity to commit the offense does not constitute entrapment." IC 35–41–3–9(b). *See also Silva v. State* (1980), Ind.App., 410 N.E.2d 1342, 1345. Here, the state's case included evidence which showed that the person who made the sale, subsequently identified as Kenney, approached and flagged down the vehicle in which Detective Huffine rode. The question of predisposition is for the trier of fact. *Silva, supra*, 410 N.E.2d at 1345. The jury could reasonably infer that someone who flags down moving vehicles to sell drugs to the occupants is predisposed to commit that crime. That is true although a police officer riding in the vehicle hopes to make a drug arrest in just that manner. The state's case was sufficient.

The decision of the trial court is affirmed.

STATON and BAKER, JJ., concur.